**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**TERRANCE MONTAGUE,**
    **Plaintiff**

    v.

**ROBERT W. MEYERS, et al.,**
    **Defendants**

No. 1:CV-00-0895

(Magistrate Judge Smyser)

FILED HARRISBURG JUL 10 2001

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF THE CASE

This is a civil action for injunctive relief and damages brought by an inmate of a Pennsylvania correctional institution under the Civil Rights Act of 1871, 42 U.S.C. §1983. Plaintiff is Terrance Montague, who is incarcerated at the State Correctional Institution at Rockview (SCI-Rockview). Defendants are various officials and employees at SCI-Rockview, including the Superintendent, Robert Meyers, and the former Secretary of the Pennsylvania Department of Corrections, Martin Horn. Plaintiff claims that he has been subjected to cruel and unusual punishment at SCI-Rockview because he has been exposed to environmental tobacco smoke ("ETS"). He seeks an order directing defendants not to double-cell him with a smoker as well as damages for the times he has been exposed to tobacco smoke. In addition, plaintiff seeks damages for a temporary transfer from SCI-Rockview to SCI-Waymart in December 2000.

Defendants answered the complaint on July 31, 2000. By order dated February 23, 2001, the Court granted leave to plaintiff to file a supplemental complaint, which he did on February 27, 2001. Defendants answered the supplemental complaint on March 12, 2001. In accordance with the Court's case management order as modified on January 9, 2001, defendants have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This memorandum of law is submitted in support of defendants' motion.

## STATEMENT OF FACTS

A statement of material facts as to which defendants contend there is no genuine dispute is submitted under separate cover. In the interest of brevity, those facts will not be repeated here. Defendants respectfully refer the Court to that statement and will cite pertinent facts from the statement in the argument section of this brief.

## QUESTIONS PRESENTED

1. Whether defendants are entitled to summary judgment because there is no evidence that plaintiff was exposed to unreasonably high levels of ETS or has suffered definable injury therefrom, and, in any event, defendants were not deliberately indifferent to his housing situation?

Defendants answered the complaint on July 31, 2000. By order dated February 23, 2001, the Court granted leave to plaintiff to file a supplemental complaint, which he did on February 27, 2001. Defendants answered the supplemental complaint on March 12, 2001. In accordance with the Court's case management order as modified on January 9, 2001, defendants have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This memorandum of law is submitted in support of defendants' motion.

## STATEMENT OF FACTS

A statement of material facts as to which defendants contend there is no genuine dispute is submitted under separate cover. In the interest of brevity, those facts will not be repeated here. Defendants respectfully refer the Court to that statement and will cite pertinent facts from the statement in the argument section of this brief.

## QUESTIONS PRESENTED

1. Whether defendants are entitled to summary judgment because there is no evidence that plaintiff was exposed to unreasonably high levels of ETS or has suffered definable injury therefrom, and, in any event, defendants were not deliberately indifferent to his housing situation?

2. Whether plaintiff's transfer to a non-smoking cell block renders his claim for injunctive relief moot?

3. Whether plaintiff cannot establish a violation of his rights for the temporary transfer to another state correctional institution?

## ARGUMENT

**I. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO EVIDENCE THAT PLAINTIFF WAS EXPOSED TO UNREASONABLY HIGH LEVELS OF ETS OR HAS SUFFERED DEFINABLE INJURY THEREFROM, AND, IN ANY EVENT, DEFENDANTS WERE NOT DELIBERATELY INDIFFERENT TO HIS HOUSING SITUATION.**

Plaintiff claims that he is entitled to damages for the temporary period of time he allegedly was required to double-cell with a smoker, which plaintiff states was February 5-29, 2000. (Complaint, §V, p.4).[1] Plaintiff's claim should be analyzed under the familiar standards of the Eighth Amendment's ban against cruel and unusual punishment. The applicable Eighth Amendment principles, as demonstrated below, require that defendants' motion for summary judgment be granted. Celotex Corp v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

---

[1] Plaintiff also has a claim for injunctive relief to prevent defendants from double-celling him with a smoker in the future. (Complaint, §V, p.4). That claim is separately addressed below.

The fundamental principles of Eighth Amendment analysis reveal that "only 'the unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment forbidden by [the Amendment]." Ingraham v. Wright, 430 U.S. 651, 670 (1977) (citations omitted). Accord Whitley v. Albers, 475 U.S. 312, 319 (1986). The Eighth Amendment must be interpreted in accordance with "the evolving standards of decency that mark the progress of a maturing society." Trop v. Dulles, 356 U.S. 86, 101 (1958). But a court, when confronted with an Eighth Amendment claim, may not impose upon a prison his or her "notions of enlightened policy." Hassine v. Jeffes, 846 F2d 169, 175 (3d Cir. 1988).

The right at issue here - - to be free from cruel and unusual punishment while incarcerated - - has both objective and subjective components. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component or prong, i.e., whether the wrongdoing is harmful enough to establish a constitutional violation, is both "contextual and responsive to 'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). In the context of the prison environment, "extreme deprivations are required to make out a conditions-of-confinement claim." Id. at 9. This is because part of the penalty facing those who violate the norms of society is routine discomfort. Rhodes v. Chapman, 452 U.S. 337, 346

-4-

(1981). The Eighth Amendment does not require that inmates be provided with comfortable prisons. Rhodes, 452 U.S. at 349; Loe v. Wilkinson, 604 F. Supp. 130, 133-34 (M.D. Pa. 1984) (Nealon, J.). Indeed, the Eighth Amendment is violated only when an inmate is deprived of the "minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347.

The subjective component is met if the person causing the deprivation acted with "a sufficiently culpable state of mind." Wilson, 501 U.S. at 298. The legal malice required to satisfy the subjective component of an Eighth Amendment claim is not present unless the defendant's conduct involved unnecessary and wanton infliction of pain. Id.; Ingraham, 430 U.S. at 670; Gregg v. Georgia, 428 U.S. 153, 173 (1976). Wantonness "does not have a fixed meaning but must be determined with 'due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged.'" Wilson, 501 U.S. at 302 (quoting Whitley, 475 U.S. at 320). In the final analysis, the Supreme Court has concluded that an inmate must demonstrate that a prison official was deliberately indifferent to the conditions of his or her confinement. Wilson, 501 U.S. at 303. In Farmer v. Brennan, 511 U.S. 825 (1994), the Court described the standard for determining deliberate indifference as follows:

> [A] prison official cannot be found liable under the Eighth
> Amendment for denying an inmate humane conditions of

>confinement unless the official *knows of and disregards an excessive risk to inmate health or safety*; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at 837 (emphasis added).

In <u>Helling v. McKinney</u>, 509 U.S. 25 (1993), the Supreme Court held that an Eighth Amendment claim could be based upon possible future harm to health, as well as present harm, arising from exposure to environmental tobacco smoke. The Supreme Court declared that the objective component of an Eighth Amendment claim based upon exposure to environmental tobacco smoke is satisfied if (1) the prisoner is being exposed to unreasonably high levels of environmental tobacco smoke; (2) scientific and statistical evidence establishes a likelihood that an injury to the prisoner's health will be caused by the exposure; and (3) the risk of harm is so grave that it "violates contemporary standards of decency to expose anyone to such a risk." <u>Helling</u>, 509 U.S. at 36.

Plaintiff cannot demonstrate that, for the short period of time he allegedly was required to be celled with a smoker, he was exposed to such unreasonably high levels of ETS that it constituted a grave risk violative of contemporary standards of decency. While it is not apparent from available records whether plaintiff's cellmates during the relevant periods of time were smokers, even if they were, he was not required to be in his cell 24 hours a day nor

-6-

can he demonstrate that the short-term exposure caused him significant harm. Furthermore, efforts were made to change cellmates as needed until such time as plaintiff would agree to the conditions for transfer to a non-smoking block. (See Statement of Material Facts, ¶¶6-12). Thus, even if plaintiff somehow *could* demonstrate that the short-term exposure was to unreasonably high levels of ETS, he cannot demonstrate the required culpable state of mind on the part of the defendants to constitute deliberate indifference. See Grote v. Ramirez, 1998 WL 757081 (9th Cir., 1998) (copy attached), citing Helling, 509 U.S. at 29-30. Moreover, plaintiff could have been transferred to a smoke-free cellblock earlier than he was transferred, but plaintiff elected to remain on A-block. (Statement of Material Facts, ¶¶11-12). Under these circumstances, the defendants hardly can be faulted for not acting more quickly, even assuming that plaintiff could meet the objective prong of the Eighth Amendment standard. Id.

For these reasons, defendants are entitled to summary judgment on plaintiff's claim for damages based upon exposure to ETS. Celotex Corp. v. Catrett, 477 U.S. at 324-26.

## II. PLAINTIFF'S TRANSFER TO A NON-SMOKING CELLBLOCK RENDERS HIS CLAIM FOR INJUNCTIVE RELIEF MOOT.

During the pendency of this action, plaintiff was transferred to a non-smoking block at SCI-Rockview in April 2001. (Statement of Material Facts, ¶¶8,12). As a consequence his request for injunctive relief has been rendered moot.

Article III of the Constitution provides that the judicial power of the United States shall extend to "cases" and "controversies." The doctrines that make up the case or controversy requirement provide "fundamental limits on federal judicial power in our system of government." Allen v. Wright, 468 U.S. 737, 750 (1984). Article III does not permit federal courts to decide moot cases. Liner v. Jafco, Inc., 375 U.S. 301, 306 n. 3 (1964) (the courts' lack of authority to review moot cases derives from the requirement of Article III under which the exercise of judicial power depends upon the existence of a case or controversy). Part of the constitutional component of the mootness doctrine is that the plaintiff maintain a "personal stake" in the outcome of the litigation. Franks v. Bowman Transportation Co., 424 U.S. 747, 755 (1976). As the Supreme Court has stated:

> In order to satisfy Article III, the plaintiff must show that he has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.

Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 99 (1979).

See also Rosetti v. Shalala, 12 F.3d 1216, 1224 (3d Cir. 1993).

The "personal stake" requirement ensures that courts will only decide disputes "presented in an adversary context and in a form historically viewed as capable of judicial resolution." U.S. Parole Commission v. Geraghty, 445 U.S. 388, 396-97 (1980). In addition, the requirement follows from the often - repeated rule that "federal courts are without power to decide questions that cannot affect the rights of the litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246 (1971). Thus, "if developments occurring in the course of adjudication eliminate a plaintiff's personal stake in the outcome of a suit, then a federal court must dismiss the [claim] as moot." Rosetti v. Shalala, 12 F.3d at 1224.

In this case, plaintiff can point to no evidence that there is a realistic possibility that in the future he will be double-celled with a smoker at SCI-Rockview. He was transferred to the non-smoking cellblock in April 2001, during the pendency of this case, and there is no evidence to suggest that he will be re-transferred from the non-smoking block. (Statement of Material Facts, ¶¶8,12,15). The fact that plaintiff may have a claim based on past injury, "'while presumably affording [the plaintiff] standing to claim damages..., does nothing to

-9-

establish a real and immediate threat that he would again' suffer injury in the future." Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 210 (1995), quoting City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983).

Accordingly, plaintiff's claim for injunctive relief should be dismissed as moot.

### III. PLAINTIFF CANNOT ESTABLISH A VIOLATION OF HIS RIGHTS FOR THE TEMPORARY TRANSFER TO ANOTHER STATE CORRECTIONAL INSTITUTION.

In his supplemental complaint filed February 27, 2001, plaintiff claims that he was transferred to SCI-Waymart in December 2000 for a mental health evaluation and that the transfer was in retaliation for filing this lawsuit. (Supplemental Pleading, generally). Defendants answered the supplemental complaint on March 12, 2001, admitting that plaintiff was transferred for assessment of needs and treatment possibilities and that the transfer was without plaintiff's consent, but denying that the transfer was in retaliation. (Answer to Supplemental Complaint, filed 3/12/01). As plaintiff testified at his deposition, his transfer to SCI-Waymart was for a short time — it lasted only three weeks, at which time he was returned to SCI-Rockview. (Deposition of plaintiff, p.50).

The claim of retaliation by inmates has been addressed recently by the Court of Appeals for the Third Circuit. In Rauser v. Horn, 241 F.2d 330, 333

(3d Cir. 2001), the Court outlined the burdens that a plaintiff must meet in order to prevail on a retaliation claim. As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the claimed retaliation was "constitutionally protected." Id. at 333. Next, he must show that he suffered some "adverse action" at the hands of prison officials. Id. The plaintiff can satisfy this requirement by showing that the action was "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Id, quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). When these two criteria are met, the plaintiff must prove a causal connection between the exercise of his constitutional rights and the allegedly adverse action then taken against him. As the Court noted in Rauser, the plaintiff has the burden to prove that his constitutionally protected conduct was "a substantial or motivating factor" in the decision to take the adverse action. 241 F.3d at 333. If this burden is met, the burden then shifts to the defendants to prove that they would have taken the same action even in the absence of the protected activity. Id. See also Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000).

We do not dispute that filing a civil action in this Court is a constitutionally protected activity. Plaintiff cannot demonstrate, however, that a temporary transfer from one prison to another, both of which are located in the

Middle District of Pennsylvania, constitutes sufficiently "adverse" action under Rauser. In the first place, plaintiff has no right to be incarcerated in any institution of his choosing. See Meachum v. Fano, 427 U.S. 215 (1976); Montanye v. Haymes, 427 U.S. 236 (1976). Thus, a prisoner like plaintiff may be transferred for any reason or no reason at all. Id. Second, plaintiff can adduce no evidence that a temporary transfer from one institution to another in the same judicial district created any significant hardship for him. The short duration of the transfer — three weeks — negates any harm. Furthermore, plaintiff can point to no filing deadline in this case which was affected by his transfer or any other measurable loss to a protected interest. A temporary transfer of approximately 160 miles with no demonstrable effect simply cannot be considered "adverse" within the meaning of Rauser and Allah. Finally, plaintiff can point to no evidence that there is a causal connection between his filing this lawsuit in May 2000 and his temporary transfer in late December 2000. Thus, plaintiff cannot meet his burden to show that the filing of the lawsuit was a substantial or motivating factor in his transfer some 7½ months later.

Accordingly, because plaintiff cannot establish the elements of a retaliation claim, elements for which he bears the burden of proof in this case, defendants' motion for summary judgment should be granted on this claim.

Celotex Corp. v. Catrett, 477 U.S. at 324-26.

## CONCLUSION

For the above-stated reasons, defendants' motion for summary judgment should be granted.

                                            **Respectfully submitted,**

                                            **D. MICHAEL FISHER**
                                            Attorney General

By: _/s/ Gregory Neuhauser_
                                            **GREGORY R. NEUHAUSER**
                                            **Senior Deputy Attorney General**

                                            **SUSAN J. FORNEY**
                                            **Chief Deputy Attorney General**
                                            **Chief, Litigation Section**

**OFFICE OF ATTORNEY GENERAL**
15th Floor, Strawberry Square
Harrisburg, PA   17120
717-787-8106

**DATE: July 10, 2001**

162 F.3d 1168 (Table)  
Unpublished Disposition

Page 30

(Cite as: 162 F.3d 1168, 1998 WL 757081 (9th Cir.(Ariz.)))

(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)

(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)

Robert Alan GROTE, Plaintiff-Appellant,  
v.  
Laura M. RAMIREZ, Deputy Warden, Arizona State Prison Complex-Winslow; Sam Lewis, Director, Director, Arizona Department of Corrections, Defendants-Appellees.

No. 98-15304.  
D.C. No. CV-95-02501-RGS.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 20, 1998. [FN2]

FN2. The panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a); 9th Cir. R. 34-4.

Decided Oct. 26, 1998.

Appeal from the United States District Court for the District of Arizona, Roger G. Strand, District Judge, Presiding.

Before T.G. NELSON, KLEINFELD, and HAWKINS, Circuit Judges.

MEMORANDUM [FN1]

FN1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36-3.

**1 Arizona state prisoner Robert Alan Grote appeals pro se the district court's grant of summary judgment for the defendants in his 42 U.S.C. § 1983 action alleging that his constitutional rights were violated by exposure to secondhand smoke. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo, see Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir.1997), and we affirm.

Grote, a Sikh, contends that the district court erred by granting the defendants qualified immunity on his claim that they violated his right to free exercise of religion by placing him in a dormitory with inmates that smoked, thereby exposing him to secondhand smoke and forcing him to disobey his faith, which prohibits smoking. Grote has failed to demonstrate the existence of a clearly established right to be free from exposure to secondhand smoke. See Browning v.. Vernon, 44 F.3d 818, 822 (9th Cir.1995) (inmate bears the burden of showing a clearly established right at the time of the alleged violation). Grote cited no cases, nor did our review reveal any, where courts have held that the free exercise clause prohibits exposure to secondhand smoke. See Malik v. Brown, 71 F.3d 724, 727 (9th Cir.1995); see also Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Because exposure to secondhand smoke has not been held unconstitutional as a violation of free exercise and the unlawfulness of such an act was not apparent in light of preexisting precedent, see Malik, 71 F.3d at 727, we conclude that a reasonable official would not have believed that he or she was violating Grote's free exercise right by exposing him to secondhand smoke. See Friedman v. South, 92 F.3d 989, 989 (9th Cir.1996); Johnson v. Moore, 948 F.2d 517, 520-21 (9th Cir.1991) (per curiam). [FN3]

FN3. Because Grote was transferred out of his dormitory on February 8, 1996, and prison officials instituted a smoking ban in June 1996 that prohibits smoking indoors except for designated areas with separate ventilation systems, Grote's claims for injunctive relief are moot. Cf. Johnson, 948 F.2d at 519. We therefore need not consider whether exposure to secondhand smoke actually violated Grote's free exercise rights.

Grote's contention that exposure to secondhand smoke violated his Eighth Amendment rights lacks merit because he has failed to demonstrate that the defendants acted with deliberate indifference. See Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Because Grote has not shown that the defendants knew of and disregarded an excessive risk to his health by exposing him to secondhand smoke, the district court correctly granted summary judgment for defendants. [FN4] Id.; see also Helling v. McKinney, 509 U.S. 25, 29-30, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

FN4. To the extent that Grote is arguing that he suffers from a substantial risk of serious injury in the future, he failed to offer any evidence to support this claim until a motion for reconsideration, which the district court denied. Thus, we will not consider Grote's claim that the defendants continue to act with deliberate indifference to the risk of future harm from secondhand smoke. See Farmer, 511 U.S. at 846; Helling, 509 U.S. at 36-37.

Accordingly, the district court did not err by granting summary judgment for the defendants.

AFFIRMED.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRANCE MONTAGUE,<br>　　Plaintiff | :<br>:<br>: No. 1:CV-00-0895 |
| v. | :<br>: (Magistrate Judge Smyser) |
| ROBERT W. MEYERS, et al.,<br>　　Defendants | :<br>: |

### CERTIFICATE OF SERVICE

I, **GREGORY R. NEUHAUSER,** Senior Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on **July 10, 2001**, I caused to be served a true and correct copy of the foregoing document **Brief in Support of Defendants' Motion for Summary Judgment** by depositing it in the United States mail, first-class postage prepaid to the following:

Terrance Montague, BZ-2761
SCI-Rockview
Box A
Bellefonte, PA 16823-0820

　　　　　　　　　　　　　　　　　　_/s/ Gregory R. Neuhauser_
　　　　　　　　　　　　　　　　　　**GREGORY R. NEUHAUSER**
　　　　　　　　　　　　　　　　　　**Senior Deputy Attorney General**