**JUDGE'S COPY** 

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRANCE MONTAGUE,<br>    Plaintiff | : | CIVIL NO. 1:CV-00-0895 |
| v. | : | (Magistrate Judge Smyser) |
| ROBERT W. MEYERS, et al<br>    Defendants | : | FILED<br>HARRISBURG, PA |

BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

AUG 17 2001

MARY E. D'ANDREA, CLERK
Per _____
             Deputy Clerk

### STATEMENT OF THE CASE

THIS IS A CIVIL ACTION FOR INJUNCTIVE RELIEF AND DAMAGES BROUGHT BY AN INMATE OF A PENNSYLVANIA CORRECTIONAL INSTITUTION UNDER THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983. PLAINTIFF TERRANCE MONTAGUE IS INCARCERATED AT SCI-ROCKVIEW. DEFENDANTS ARE VARIOUS OFFICIALS AND EMPLOYEES AT SCI-ROCKVIEW, INCLUDING THE FORMER SECRETARY OF THE PENNSYLVANIA D.O.C., MARTIN HORN. PLAINTIFF ALLEGES THAT HE HAS BEEN SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT AT SCI-ROCKVIEW, WHERE HE HAS ASTHMAS, WAS BEING EXPOSED TO SECOND HAND SMOKE AND/OR HIGH LEVELS OF "ETS" BY DEFENDANTS IGNORING HIS PLEAS, REQUEST, AND HIS INMATE GRIEVANCES TO NOT CELL HIM WITH INMATES THAT SMOKE AND/OR TO REMOVE HIM FROM CELLS WITH INMATES THAT SMOKE, WHERE PLAINTIFF'S HEALTH AND/OR ASTHMAS HAS GOTTEN WORSE, AND WHERE DEFENDANTS HAVE SMOKING POLICIES IN PLACE THAT TELLS THEM OF THE HAZARDS OF CIGARETTE SMOKE AND PROVIDES THAT NON-SMOKING INMATES NOT BE HOUSED OR SUBJECT TO THE SMOKE OF A CELLMATE WITHOUT THE CONSENT OF THE NON-SMOKER.

IN ADDITION, PLAINTIFF SEEKS DAMAGES FOR RETALIATION AGAINST HIM FOR FILING THIS INSTANT ACTION, WHICH INCLUDES PLAINTIFF BEING TRANSFERRED FROM SCI-ROCKVIEW TO THE MENTAL HEALTH UNIT, WHERE THEY KEEP THE CRIMINALLY INSANE, AT SCI-WAYMART FOR A MENTAL HEALTH EVALUATION IN DECEMBER 2000, GUARDS SMOKING RIGHT OUT SIDE PLAINTIFF'S CELL IN A NON-SMOKING AREA, SUBJECTING PLAINTIFF TO THEIR SMOKE.

DEFENDANTS ANSWERED THE COMPLAINT ON 7/31/00. BY ORDER DATED 2/23/01, PLAINTIFF WAS GRANTED LEAVE TO FILE A SUPPLEMENTAL COMPLAINT, WHICH HE DID ON 2/27/01. DEFENDANTS ANSWERED THE SUPPLEMENTAL COMPLAINT ON 3/12/01. DEFENDANTS FILED A MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE. THIS MEMORANDUM OF LAW IS SUBMITTED IN RESPONSE TO DEFENDANTS' MOTION.

### STATEMENT OF FACTS

THERE IS A GENUINE DISPUTE IN DEFENDANTS STATEMENT OF MATERIAL FACTS, AND/OR THERE ARE GENUINE ISSUES OF MATERIAL FACT. IN THE INTEREST OF BREVITY, THOSE FACTS WILL NOT BE REPEATED HERE. PLAINTIFF RESPECTFULLY REFER THE COURT TO THE STATEMENT OF FACTS AND WILL CITE PERTINENT FACTS FROM THE STATEMENT IN THE ARGUMENT SECTION OF THIS BRIEF.

## ARGUMENT

I. WHETHER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO EVIDENCE THAT PLAINTIFF WAS EXPOSED TO UNREASONABL HIGH LEVELS OF ETS OR HAS SUFFERED DEFINABLE INJURY THEREFROM, AND, IN ANY EVENT, DEFENDANTS WERE NOT DELIBERATELY INDIFFERENT TO HIS HOUSING SITUATION.

PLAINTIFF RESPONSES IN THE NEGATIVE.

THE APPLICABLE EIGHTH AMENDMENT PRINCIPLES, AS DEMONSTRATED BELOW, REQUIRE THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DISMISSED, AS CITED IN BEESON V. JOHNSON, 688 F.SUPP. 498 (E.D.N.C. 1987):

"A PRO SE COMPLAINT MUST BE LIBERALLY CONSTRUED... IT IS WELL ESTABLISHED THAT THERE MAY BE A VIOLATION OF A PRISONER'S EIGHTH AMENDMENT RIGHTS WHERE, IN VIEW OF THE TOTALITY OF THE CIRCUMSTANCES AT A PRISON, THERE IS AN UNREASONABLE THREAT TO THE PRISONER'S MENTAL OR PHYSICAL HEALTH... A MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED "ONLY WHERE IT IS PERFECTLY CLEAR THAT NO ISSUE OF FACT IS INVOLVED AND INQUIRY INTO THE FACTS IS NOT DESIRABLE TO CLARIFY THE APPLICATION OF THE LAW... THE PLAINTIFF'S FORECAST OF HIS EVIDENCE MUST ALL BE TAKEN AS TRUE AND HE BE GIVEN THE BENEFIT OF ALL FAVORABLE INFERENCES AND LEGAL THEORIES...

IT IS PARTICULARLY IMPORTANT TO OBSERVE THAT THE LAW DOES CHANGE, NOT ONLY BECAUSE OF DIFFERENT INTERPRETATIONS BY APPELLATE COURTS, BUT ALSO BECAUSE OF ADVANCEMENTS OF KNOWLEDGE WHICH CAST NEW LIGHT ON KNOWN LEGAL STANDARDS. THE EIGHTH AMENDMENT "MUST DRAW ITS MEANING FROM THE EVOLVING STANDARDS OF DECENCY THAT MARK THE PROGRESS OF MATURING SOCIETY." IF, EXAMPLE, A PARTICULAR FOOD ADDITIVE WHICH HAD BEEN MARKETED FOR YEARS UNDER THE SINCERE BELIEF THAT IT WAS HARMLESS WAS DISCOVERED TO BE POISONOUS, NO ONE WOULD DOUBT THAT ONE WHO SOLD THE PRODUCT TO THE CONSUMING PUBLIC, KNOWING IT TO BE POISONOUS, WOULD BE LIABLE BOTH CIVILLY AND CRIMINALLY FOR INJURIES CAUSED BY THE CONSUMPTION OF THAT PRODUCT. WHEREAS BEFORE THE DISCOVERY OF TOXICITY, THE SALE OF THE PRODUCE WAS LEGAL, AFTER THE DISCOVERY, THE SALE WOULD BE ILLEGAL. IN THAT CASE, THE LAW DID NOT CHANGE; ONLY SCIENTIFIC KNOWLEDGE DID.

WE LIVE IN A TIME IN WHICH KNOWLEDGE ABOUT THE HAZARDS OF TOBACCO SMOKE IS DEVELOPING AT A RAPID RATE... SOME FACTS IN THE AREA ARE KNOWN TO EVERYONE... WHEN TOBACCO IS SMOKED, TWO KINDS OF SMOKE IS EMITTED: MAINSTREAM SMOKE, WHICH IS DRAWN THROUGH THE CIGARETTE OR CIGAR, AND SIDESTREAM SMOKE, WHICH IS EMITTED FROM THE BURNING END DIRECTLY INTO THE AIR... BOTH MAINSTREAM AND SIDESTREAM SMOKE CONTAIN HUNDREDS OF CHEMICALS AND HAZARDOUS COMPOUNDS, INCLUDING TAR, NICOTINE, CARBON MONOXIDE, CADMIUM, NITROGEN DIOXIDE, AMMONIA, BENZENE, FORMALDEHYDE, AND HYDROGEN SULPHIDE... WHEN A SMOKER INHALES, THE TEMPERATURE OF THE FIRE ON THE CIGARETTE IS MUCH HIGHER BECAUSE OXYGEN IS DRAWN IN. THE HIGHER TEMPERATURE CAUSES MORE COMPLETE COMBUSTION SO THAT FEWER DANGEROUS CHEMICALS ARE FOUND IN MAINSTREAM SMOKE THAN IN SIDESTREAM SMOKE. PUT ANOTHER WAY, BECAUSE

OF THE LOWER TEMPERATURE OF COMBUSTION PRODUCING IT, SIDESTREAM SMOKE-
TO WHICH NONSMOKERS ARE PRIMARILY EXPOSED - CONTAINS FAR MORE
DANGEROUS CHEMICALS THAN MAINSTREAM SMOKE."

    FIRST, THE PLAINTIFF, JUST LIKE THE INMATE IN BEESON V. JOHNSON,
ID., HAS ESTABLISHED BY HIS OWN TESTIMONY AND CAN ESTABLISED BY
HIS MEDICAL RECORD THAT HE SUFFERS FROM A MEDICAL CONDITION (ASTHMAS),
WHICH IS AGGRAVATED BY INHALATION OF TOBACCO SMOKE, WHERE THIS
CONDITION HAS GOTTEN WORSE SINCE BEING PUT UNDER THE LIVING CONDITIONS
AT SCI-ROCKVIEW.
    SECOND, PLAINTIFF CAN AND/OR HAS SHOWN THAT DEFENDANTS WERE
DELIBERATELY INDIFFERENT TO HIS HOUSING SITUATION, WHERE: (1)
DEFENDANTS' HAD IN PLACE D.O.C. POLICY 15.3.6, "SMOKING IN DEPARTMENT
OF CORRECTIONS BUILDING AND FACILITIES" (5/20/94), "SCI-ROCKVIEW
SMOKING POLICY" (8/22/94) AND MANAGEMENT DIRECTIVE 205.19, "SMOKING
IN COMMONWEALTH BUILDINGS/FACILITIES" (7/01/97), ADVISING DEFENDANTS
OF THE DANGERS AND SIGNIFICANT RISK TO THE HEALTH OF THE SMOKER AND
NON-SMOKER, OF THE HEALTH RISK INVOLVED IN CELLING NON-SMOKING INMATES
WITH INMATE WHO SMOKE WITHOUT THE NON-SMOKERS CONSENT, WHERE
DEFENDANTS RECKLESSLY DISREGARDED THEIR OWN POLICYS; (2) WHERE
PLAINTIFF WAS MORE THAN ONCE, WITHOUT HIS PERMISSION, CELLED WITH
INMATES WHO WERE HEAVY SMOKERS, WHERE PLAINTIFF EACH TIME TALKED
TO, SENT "REQUEST TO STAFF" TO, AND FILED A GRIEVANCE TO PRISON
OFFICIALS, TELLING THEM THAT HE WAS A NON-SMOKER AND HAD A MEDICAL
CONDITION (ASTHMAS) THAT WAS IRRITATED BY CIGARETTE SMOKE, AND THAT
DEFENDANTS RECKLESSLY DISREGARDED PLAINTIFF'S COMPLAINTS. WHERE
PRO SE PLAINTIFF CAN PRODUCE AT TRIAL "D.O.C. POLICY STATEMENTS"
AND/OR ARTICLES FROM D.O.C. (WHICH SCI-ROCKVIEW WILL NOT ALLOW
PLAINTIFF TO COPY AND SEND TO THIS COURT) THAT SHOW SUCH SMOKE IS
HAZARDOUS TO THE HEALTH OF ANYONE, MUCH LESS PERSONS WHO HAVE SOME
HEIGHTENED DANGER FROM IT. WHERE IT IS REASONABLE TO EXPECT THAT
PLAINTIFF WITH A TRAINED ATTORNEY OR A MEDICAL EXPERT COULD OBTAIN
MUCH BETTER EVIDENCE.

    IN HELLING V. MCKINNEY, 112 S.CT. 291 (1991), INMATE WAS ASSIGNED
TO A CELL WITH ANOTHER INMATE WHO SMOKED HEAVILY, AND IT WAS HELD:
THAT IT WOULD NOT BE IMPROPER FOR THE COURT TO ADD A CLAIM AGAINST
DEFENDANTS BASED ON POSSIBLE FUTURE EFFECTS OF ETS, AND REQUEST THIS
COURT TO DO SO.

    IN MCKINNEY V. ANDERSON, 959 F.2D. 853 (9TH CIR. 1992), IT WAS
HELD: TO BE CRUEL AND UNUSUAL PUNISHMENT TO HOUSE A PRISONER IN AN
ENVIRONMENT THAT EXPOSES HIM TO LEVELS OF ETS THAT POSE AN
UNREASONABLE RISK OF HARMING HIS HEALTH CONSTITUTES THE OBJECTIVE
COMPONENT OF THIS INSTANT ACTION.

    IN CROWDER V. KELLY, NOS. CIV.A.94-702, CIV.A.94-1603,
CIV.A.94-2269, CIV.A.94-2136, CIV.A.94-1728, CIV.A.95-1889, U.S.
DISTRICT COURT, DISTRICT OF COLUMBIA, HAS HELD: (1) THAT EVEN
SHORT-TERM EXPOSURE TO ENVIRONMENTAL TOBACCO SMOKE [ETS] CAUSES
NONSMOKING PRISONERS "IRREPARABLE INJURY," INCLUDING AN "ELEVATED
RISK OF LUNG CANCER AND HEART DISEASE;" (2) A PRISON'S REFUSAL TO
PROTECT THE PRISONERS LIKE THE PLAINTIFF IS "RECKLESS INDIFFERENCE
FOR THE HEALTH OF THAT INMATE;" (3) THAT FORCING A PRISONER TO

BREATHE ETS FROM HIS CELLMATE'S SMOKING MAY CONSTITUTE "CRUEL AND UNUSUAL PUNISHMENT;" (4) THAT A PRISONER NEED NOT SHOW THAT THE SMOKE HAS CREATED OR IS CREATING A CURRENT HEALTH PROBLEM, BUT RATHER CAN RELY UPON EVIDENCE BASED UPON "POSSIBLE FUTURE EFFECTS" OF THE SMOKE; AND (5) THAT IN DETERMINING WHETHER THE PLAINTIFF CAN SHOW THAT HE HAS BEEN EXPOSED TO AN UNREASONABLE LEVEL OF ETS, THE COURT MUST "ASSESS WHETHER SOCIETY CONSIDERS THE RISK THAT THE PRISONER COMPLAINS OF TO BE SO GRAVE THAT IT VIOLATES CONTEMPORARY STANDARDS OF DECENCY TO EXPOSE ANYONE UNWILLINGLY TO SUCH A RISK.

FOR THESE REASONS, DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT.

III. WHETHER PLAINTIFF CANNOT ESTABLISH A VIOLATION OF HIS RIGHTS FOR THE TEMPORARY TRANSFER TO ANOTHER STATE CORRECTIONAL INSTITUTION.

PLAINTIFF RESPONSES IN THE NEGATIVE.

PLAINTIFF CAN PROVE THAT THE CONDUCT WHICH LED TO THE CLAIMED RETALIATION WAS "CONSTITUTIONALLY PROTECTED," WHERE DEFENDANTS DO NOT DISPUTE THAT FILING A CIVIL ACTION IN THIS COURT IS A CONSTITUTIONALLY PROTECTED ACTIVITY.

PLAINTIFF CAN DEMONSTRATE THAT SAID TEMPORARY TRANSFER FROM SCI-ROCKVIEW TO THE MENTAL HEALTH UNIT, WHERE THEY KEEP THE CRIMINALLY INSANE, AT SCI-WAYMART DOES CONSTITUTES AN "ADVERSE" ACTION UNDER RAUSER V. HORN, 241 F.2D 330, 333 (3D CIR. 2001). SAID TRANSFER DID CREAT A SIGNIFICANT HARDSHIP FOR PLAINTIFF, WHERE FOR THREE WEEKS PLAINTIFF WAS FORCED TO LIVED WITH, EAT WITH, SLEPT WITH, AND WAS CONSIDERED A PERSON WITH METAL HEALTH PROBLEMS, A CRIMINALLY INSANE PERSON, AND WHERE PLAINTIFF FEARED HE MAY BE KEPT THERE AND DRUGED TO KEEP HIM FROM PRESSING THIS ACTION, WHICH LAID VERY HEAVIER ON PLAINTIFF'S MIND, AND CAUSED PLAINTIFF MENTAL PAIN AND SUFFERING, AND WHERE ITS CLEAR THAT THIS TYPE OF TRANSFER WOULD DETER ANY PERSON OF ORDINARY FIRMNESS FROM EXERCISING HIS CONSTITUTIONAL RIGHTS.

PLAINTIFF CAN POINT TO EVIDENCE THAT THERE IS A CAUSAL CONNECTION BETWEEN HIS FILING THIS LAWSUIT AND SAID TEMPORARY TRANSFER WHERE: (1) PLAINTIFF WAS UNDER NO TREATMENT FOR MENTAL HEALTH; (2) PLAINTIFF HAD NO BREAKDOWNS; (3) PLAINTIFF HAD NO MENTAL EPISODES, AND (4) THIS TRANSFERRED FOR A MENTAL HEALTH EVALUATION WAS NOT AT SCI-ROCKVIEW, BUT AT SCI-WAYMART IN THEIR MENTAL HEALTH UNIT, WHERE THEY KEEP THE CRIMINALLY INSANE.

DEFENDANTS CAN NOT PROVE THAT THEY WOULD HAVE MADE THE SAME DECISION ABSENT THE PROTECTED CONDUCT FOR REASONS REASONABLY RELATED TO A LEGITIMATE PENOLOGICAL INTEREST.

## CONCLUSION

FOR THE FOREGOING REASONS, AND BECAUSE OF THE RETALIATION BY THE GUARDS SMOKING IN FRONT OF PLAINTIFF'S CELL, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.

Dated: 8-14-01

Terrance Montague, 87-2761
Box A, Bellefonte, PA
16823-0820