IN THE UNITED STARS DISTRICT COURT FOR THE

MIDDLE DISTRICT OF PENNSYLVANIA

JUDGE'S COPY.

COPY
65

TERRANCE MONTAGUE

    V. PLAINTIFF

ROBERT W. MEYERS, ET AL.

       DEFENDANTS

NO. 1: CV-00-0895

(MAGISTRATE Judge SMYSER

EXHIBITS IN SUPPORT OF PLAINTIFF

OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

FILED
HARRISBURG, PA

SEP 13 2001

MARY E. D'ANDREA, CLERK
Per_____
        Deputy Clerk

DATE: SEPTEMBER 4TH 2001

_Terrance Montague_

TERRANCE MONTAGUE
S.C.I. ROCKVIEW
BOX A BELLEFONTE, PA /682

TABLE OF CONTENTS                    EXHIBIT  PAGe

1. "REQUEST TO STAFF" — — — — — — — — A-1

2. "INMATE GRIEVANCES" — — — — — — — — — B1 — B22

3. "MEDICAL RECORDS TO PROVE UNIT MANAGER WAS ADVISED BY
   MEDICAL STAFF ABOUT PLAINTIFF ASTHMAS — — — — — C1 — C4

4. "AFFIDAVITS FROM OTHER INMATES TO CONFIRM THAT
   INMATES AND GUARDS SMOKE ON THE NON-SMOKING BLOCK" — D1 — D2

5. "AFFIDAVITS FROM THOSE CELLMATE SMOKERS" — — — — E1 — E2

6. "MEDICAL RECORDS" THAT PROVE PLAINTIFF HAS ASTHMAS" — — F1 — F12

7. "COMMONWEALTH OF PENNSYLVANIA, D.O.C., S.C.I.- ROCKVIEW
   SMOKING POLICY, 15.3.6 ROC1 — — — G1 — G6

8. "THE PENNSYLVANIA MANUAL FROM THE DEPARTMENT OF
   CORRECTIONS PROVES THAT S.C.I. WAYMART, IS A STATE'S
   FORENSIC TREATMENT UNIT FOR MALE INMATES (MENTAL HEALTH UNIT) — H1 — H2

CERTIFICATE OF SERVICE

No Answer    Get Copi's
                    3

**DC-135A**

**COMMONWEALTH OF PENNSYLVANIA**

**DEPARTMENT OF CORRECTIONS**

## INMATE'S REQUEST TO STAFF MEMBER

INSTRUCTIONS

*Complete Items Number 1-7. If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently.*

| 1. TO: (NAME AND TITLE OF OFFICER) MR. Aliar | 2. DATE 3-10-00 |
|---|---|
| 3. BY: (INSTITUTIONAL NAME AND NUMBER) TeRRANce MONTAGue #132-2761 | 4. COUNSELOR'S NAME MR. HAKeeM |
| 5. WORK ASSIGNMENT | 6. QUARTERS ASSIGNMENT 318 |

7. SUBJECT: STATE COMPLETELY BUT BRIEFLY THE PROBLEM ON WHICH YOU DESIRE ASSISTANCE.  GIVE DETAILS.

MR. Aliar,

AM WRitTing TO Ask you MAy you please MovE Me TO The NON-smokers block

I hAve AsthAms And I do have To use A InhAleR To help Me breath better.

All you have To do is Check my Medical Records And you will see for yourse

THANK YOU

very Much

Terrance Montag

CC. ATTORNEY WILLIAM T. HANGley

8. DISPOSITION: (DO NOT WRITE IN THIS SPACE)

EXHIBIT  A1

☐ TO DC-14 CAR ONLY              ☐ TO DC-14 CAR AND DC-15 IRS

| STAFF MEMBER | DATE |
|---|---|

**DC-804**
**PART 1**



*EXHIBIT*
*B-1*

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**                    GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| MR. Meyers | SCI - Rockview | 12-31-99 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| Jerance Montague #BZ-2761 | Jerance Montague | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| | A-217 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

MR. Meyers, I HAVE A VERY VERY Serious problem that requires to be Addressed And ACTEd upon with the utmost of urgency. THEy put me in a cell with A person who smoke. And I don't smoke. Because I have ASTHMAS And I ALREADY HAVE problems Breathing And I have A Inhaler in my cell with me now that I have to use to help My health better. And it's in my Medical Records About me Having A Respirat Diseases. By having this inmate who smokes is putting My life in danger. this is Cruel And unusual punishment which is A Violation of my Eighth Amendment Rights. And when telling my unit manger MR. Duck About this problem He said How I know you didn't steal them Inhaler's you have in your cell. To him All this is A Joke. I Am currently housed in A-Block cell 217. This is Also Being Deliberately Indifferent to my general well-being. my family has been Notified And so will higher Authorities.                    THANK YOU
                                                                                    Jerance Monta

B. Actions taken and staff you have contacted before submitting this grievance:

Major Joe yancey    Larry Lidgett
Unit Manger MR. Duck    MR. Kushwava
LT. Soleto

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Grievance Coordinator                                        Date

**DC-804**
**PART 1**



EXHIBIT
B-1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**                    GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| MR. Meyers | SCI-Rockview | 12-31-99 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| Jenance Montague #BZ-2761 | Jenance Montague | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| | A-217 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

MR. Meyers, I have A very very serious problem that requires to be Addressed
And acted upon with the utmost of urgency. They put me in a cell with a person
who smoke And I Don't smoke Because I have ASTHMAS And I Already have problems
Breathing And I have a Inhaler in my cell with me now that I have to use to
help me breath better And it's in my Medical Records About me having A Respirat_
Diseases. By having this Inmate who smoke is putting my life in Danger this is
Cruel And unusual Punishment which is a violation of my Eighth Amendment
Rights And when telling my unit Manger Mr. Duck about this problem He said How
I know you didn't steal them Inhaler's you have in your cell To him All th_
is a Joke I Am currently housed in A-Block cell 217 this is Also Being
Deliberately Indifferent to my general well-being my family has
been Notified An so will higher Authorities.                    Think you
                                                                Jenance Monta_

B. Actions taken and staff you have contacted before submitting this grievance:

MAJOR. yancey     Larry Lidgett
UNITMANGER Mr. Duck    Mr. Kushwava
LT. Soleto

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____          _____
Signature of Grievance Coordinator                    Date



**DC-804**
**PART I**

EXHIBIE
B-1

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS
### P.O. BOX 598
### CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**

**GRIEVANCE NO.**

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| MR. Meyers | SCI-Rockview | 12-31-99 |

| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE |
|---|---|
| Terrance Montague #BZ-2761 | Terrance Montague |

| WORK ASSIGNMENT | QUARTERS ASSIGNMENT |
|---|---|
|  | A-217 |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

MR. Meyers, I have a very very serious problem that requires to be addressed and acted upon with the utmost of urgency. They put me in a cell with a person who smoke and I don't smoke because I have asthmas and I already have problems Breathing and I have a inhaler in my cell with me now that I have to use to help me breath better and it's in my Medical Records about me having a Respirat Diseases. By Having this inmate who smoke is putting my life in danger this is cruel and inusual punishment which is a violation of my Eighth Amendment Rights. And when telling my unit manger MR. Duck about this problem He said How I know you didn't steal them inhaler's you have in your cell. To him all this is a Joke. I am currently housed in A-Block cell 217 this is also being Deliberately Inhifferent to my general well-being. my family has been notified and so will higher authorities.
Thank you
Terrance Montague

B. Actions taken and staff you have contacted before submitting this grievance:

Major Joe Yancey    Larry Lidgett
Unit Manger MR. Duck    MR. Kushwara
LT. Soleto

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____        _____
Signature of Grievance Coordinator                    Date

**DC-804**
**PART 1**



**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

EXHIBIT
B-2

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| NR Meyers | SCI - Rockview | 12-31-99 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| Terrance Montague | Terrane Montague | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| | A-217 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

NOT ONLY that EVERYTIME I SUBMIT A GRIEVANCE TO MR. KUSHWAVA HE SEND MOST OF THEM BACK OR don't ANSWER THEM JUST like THE ONE I send him About this MATTER. why have A GRIEVANCE COORDINAT if HE'S NOT going TO ANSWER And file INMATES GRIEVANCE. MR Meyers I AM SUBMITTING THIS TO YOU IN good FAITH And WITH GREAT RESPECT. THIS is A VERY SERIOUS MEDICAL problem that needs to be handle.

THANK YOU VERY MUCH
Terrance Montague

B. Actions taken and staff you have contacted before submitting this grievance:

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____ Signature of Grievance Coordinator       Date

**DC-804**
PART II

*JET COPY'S*
*3*

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001

*EXHIBIT*
*B-3*

**OFFICIAL INMATE GRIEVANCE**
**INITIAL REVIEW RESPONSE**

GRIEVANCE NO.    #ROC0768-99

| TO: (Name & DC NO.) | INSTITUTION | QUARTERS | GRIEVANCE DATE | |
|---|---|---|---|---|
| Terrance Montague, BZ-2761 | SCIR | Bldg A | Received | 12/28/99 12/30/99 |

The following is a summary of my findings regarding your grievance:

This matter was reviewed with Mr. Duck, Unit Manger.  The smoking preference of an inmate, along with any medical condition adversely affected by cigarette smoke, are but two of the many factors considered by Unit Staff when celling inmates together.  On a unit with some 440 inmates, moves will be difficult to always satisfy both cellmates.  Provisions are in place to allow non-smokers to cell with non-smokers, but the time frames for such moves are <u>not</u> immediate.

Mr. Duck informs me you are no longer housed in A-Unit, which would make this grievance a moot issue.

JAR:hae

CC:  Deputy Wakefield
     Deputy Whitman
     Major Yancey
     Mr. Duck
     Case Record
     Mr. Rackovan

| Refer to DC-ADM 804, Section VIII, for instructions on grievance system appeal procedures. | SIGNATURE OF GRIEVANCE COORDINATOR *Jeffrey Rackovan* | DATE 1/11/2000 |
|---|---|---|

**DC-804**
**PART 1**



**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA. 17001-0598

*EXHIBIT*
*B-7*

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. | R OC-0073-0

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Mr. Kushwara | S.C.I - Rockview | 2-7-2000 |
| FROM: (Commitment Name & Number) Terrance Montague BZ 2761 | INMATE'S SIGNATURE Terrance Montague | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT A - 518 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

Mr. Kushwara, I have a very serious problem that requires to be addressed and acted upon; They put a inmate in my cell that smoke and I don't smoke Because I have Asthmas and I already have problems breathing and I have two inhalers in my cell with me now that I have to use to help me breath better and by having this inmate who smoke in the cell with me is putting my health in danger, it's in my medical records about me having a respiratory diseases, also I have a bottom bunk status because of me having seizure, and I have meds in my cell that I have to take to help stop me from having seizure, it is also in my medical records that I have a bottom bunk and I told my unit manger and he still haven't done anything about nietther one of these matters my life is

B. Actions taken and staff you have contacted before submitting this grievance:

Larry Lidgett    LT Decker
May Joe Yancey    Unit Manger Mr. Allar

Your grievance has been received and will be processed in accordance with DC-ADM 804.    Mr. Allar - Due 2/24

*Jeffrey Rackovan*    Conditions    2/16/00
Signature of Grievance Coordinator    Date    Rec'd: 3/2

**DC-804**
**PART 1**



EXHIBIT
B-5

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. | ROC-0073-03

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Mr. Kushwara | SCI ROCKVIEW | 2-7-2003 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| Terrance Montague #BZ-2701 | Terrance Montague | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| | A-518 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

being PUT iN DANGER everyday AM iN The Cell wiTh This INMATE, NOT ONLY
ThAT whAT happen if I have A Seizure, and fall ouT of MY Bed becaus
of me having a Seizure. I'AM CURRENTly HouseD iN A Block Cell 518 AN
in truth This Jail Know About My MeDical About My MeDical STACTES
And STill don't do Anything About it is AN ouT RighT BLATANT ViolATION
of MY EighT AND FourTeeTh amenDments, Also This is being DeliGERAT
Indifferent TO MY GENERAl well being. MY FAMily has been NOTIfied
AndSo will higher AuThORiTIES. Mr. KushwARA, AM NOT TRying TO
CAUSE ANy pROblems buT this is MY health. Where Talking AbouT

THANK YOU Very
Much            #BZ-27
Terrance Montague

B. Actions taken and staff you have contacted before submitting this grievance:

LARRy LidgeTT   LT DeckER
MAjor YANcey   UNiT MANgeR MR. AllAR

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Jeffrey Rackovan                                    2/14/00
Signature of Grievance Coordinator                      Date

**DC-804**
**PART II**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001

*EXHIBIT*
*B-6*

**OFFICIAL INMATE GRIEVANCE**
**INITIAL REVIEW RESPONSE**

RECEIVED
FEB 29 2000
at Rockview
Superintendent's Office

GRIEVANCE NO.

#ROC0073-00-

02/07/00

| TO: (Name & DC NO.) | INSTITUTION | QUARTERS | GRIEVANCE DATE Received |
|---|---|---|---|
| Terrance Montague, BZ-2761 | SCIR | Bldg A | 02/16/00 |

The following is a summary of my findings regarding your grievance:

This grievance was reviewed with Mr. Allar, Unit Manager, who contacted the Employment Office and again verified that you are on bottom bunk status. Currently you are housed in cell 518, bed 1, which is, in fact, bottom bunk status. According to the Employment Office you have no medical restrictions that prevent you from having a cell mate who smokes.

No further action is necessary regarding this grievance.

JAR:hae

c:    Deputy Wakefield
      Deputy Whitman
      Mr. Allar
      Mr. Zurybida
      Case Record
      Mr. Rackovan

| Refer to DC-ADM 804, Section VIII, for instructions on grievance system appeal procedures. | SIGNATURE OF GRIEVANCE COORDINATOR Jeffrey Rackovan | DATE 2/29/00 |
|---|---|---|

**DC-804**
**PART 1**



*EXHIBIT*
*B-1*

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

*Appeal to*
*0073-00*

**OFFICIAL INMATE GRIEVANCE**

GRIEVANCE NO. ~~Roc-007-00~~

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| MR. ROBERT W. MEYERS | SCI - ROCKVIEW | 2-26-2000 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| TERRANCE MONTAGUE #BZ-2761 | Terrance Montague | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| | A-5/8 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

MR. MEYERS, I have a very serious problem that requires to be addressed and act
upon, on 2-9-2000 They put a inmate in my cell with me that smoke and
I don't smoke because I have asthmas and I already have problems breathing
and I have two inhalers in my cell with me now that I have to use to help
me breath better and by having this inmate who smoke in my cell with
me is putting my health in danger, it's in my medical records about me
having a respiratory diseases and I have bottom bunk status because
of me having seizure and I have meds in my cell that I have to take
to help stop me from having seizure I told my unit manger about
both matters and he still haven't done anything about these
matters, My life is being put in danger everyday an on the

B. Actions taken and staff you have contacted before submitting this grievance:

Larry Lidgett    Unit Manger Mr. ????

Jeffrey Rackovan    Lt. ????

Major ????

---

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Grievance Coordinator                                                      Date

DC-804
PART 1    (2)

EXHIBIT
B-8

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

OFFICIAL INMATE GRIEVANCE                    GRIEVANCE NO. _____

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| MR. ROBERT W. MEYERS | SCI - ROCKVIEW | 7-26-200 |
| FROM: (Commitment Name and Number) | INMATE'S SIGNATURE | |
| TERRANCE MONTAGUE  BZ-2761 | Terrance Montague | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| | A-518 | |

INSTRUCTIONS:
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

Cell with this INMATE, NOT only that what happen if I have
A asthmas attack because of this INMATE, I AM currently housed
in A Block cell 518 And by this Jail knowing this this is an out
right blatant violation of my Eight and fourteeth Amendments
I'm not trying to cause any problems, this is also being
Deliberately Indifferent to my general well being my family
has been notified and so will higher authorities, Mr. Meyers

THANK YOU
very much
Terrance Montague

B. Actions taken and staff you have contacted before submitting this grievance:

Jeffrey Rackovan   UNIT MANAGER Mr. Aline
Larry Lidgett        LT. Decker
Major Yancey

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____                    _____
Signature of Grievance Coordinator                         Date

*EXHIBIT*
*B-9*

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
SCI-Rockview
(814) 355-4874
March 1, 2000

SUBJECT:   Appeal in Grievance #ROC0073-00

TO:        Terrance Montague, #BZ-2761
           Building A

FROM:      R. W. Meyers
           Superintendent

Your appeal is practically a word-for-word restatement of the original grievance.

Mr. Allar indicates he investigated your claims of requiring a bottom bunk and a non-smoking cellmate. The need for bottom bunk status was verified and you are in the bottom bunk of your cell. Although there is an indication of asthma history in your medical records, you are not currently on any type of medication, including inhalers, for any respiratory problems. Therefore, there is no medical need for you to be celled with a non-smoker.

If you wish to pursue this matter, you must follow the established A Building procedures for requesting to cell with a non-smoker through your unit manager.

The initial review response is sustained in full.

RWM/JAR:tlk

c:    Deputy Wakefield
      Deputy Whitman
      Mr. Allar
      Mr. Zurybida
      Case Record
      Mr. Rackovan

State Correctional Institution

DC-804
PART 1

MAY 0 3 2000

Clerk's Assistant's Office

EXHIBIT
B-10

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**                    GRIEVANCE NO.   ROC-0198-00

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| Mr. RACKOVAN | SCI-ROCKVIEW | 4-28-00 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| TERRANCE MONTAGUE #BZ-2761 | Terrance Montague | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| | A-332 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

MR. RACKOVAN, ON 4-27-2000 THEy put ME IN WITH A SMOKER AND I don't SMOKE
BECAUSE OF ME having ASTHMAS AND I Already have PROBLEMS BREATHING
AND I have TWO INHALERS IN My CEII WITH ME NOW THAT I have TO USE TO
heIP ME breath beHER AND by having ME IN THE CEII WITH A INMATE
WHO SMOKE is putting My HEALTH IN DANGER, if you WAS TO look IN
My MEDICAI RECORDS iT will Show you THAT I have A RESPIRATORY DISEASE
This is SOMETHING THIS JAII KNOW About but KEEP putting ME IN WITH
SMOKERS ANyWAy, NOT ONIy THAT I have BOTTOM BUNK STATUES because OF
ME having SEIZURES AND They KEEP putting ME IN CEIIS ON THE TOP BUNK
This is AISO IN My MEDICAI RECORDS, why is They KEEP putting ME THE CEII
WITH PEOPIE WHO SMOKE, This SHEW This JAII don't CARE ABout About My WEII-BEING
My FAMILy hasBEEN NOTIfiED AND So will hIGHER AUTHERITIES.          THANK YOU
                                                                    Terrance Montague

B. Actions taken and staff you have contacted before submitting this grievance:

S.G.T. DAIE - BIOCK S.G.T

MRS. MARGE MILLER - HEAD NURSE

Your grievance has been received and will be processed in accordance with DC-ADM 804.    Mr. Allar- Due 5/10

_Jeffrey Rackovan_ conditions                                      5/3/00
Signature of Grievance Coordinator                                 Date
                                                                   Due: 5/17

WHITE - Grievance Coordinator Copy     CANARY - File Copy     PINK - Action Return Copy     GOLDENROD—Inmate Copy

DC-804
PART II.

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA 17001

OFFICIAL INMATE GRIEVANCE          *EXHIBIT*          GRIEVANCE NO.   #ROC0198-00
INITIAL REVIEW RESPONSE               *B-11*

| TO: (Name & DC NO.) | INSTITUTION | QUARTERS | GRIEVANCE DATE 04/28/00 |
|---|---|---|---|
| Terrance Montague, BZ-2761 | SCIR | Bldg A | Received 05/03/00 |

The following is a summary of my findings regarding your grievance:

This grievance was reviewed with Mr. Allar, Unit Manager.  You have recently received a medical restriction of ground floor and bottom bunk.  Mr. Allar was never informed of a medical restriction that mandated you to have a non-smoking cellmate.  Mr. Allar last week changed your cellie at your request and you are now celled with someone of your own choosing.  Consequently, this grievance requires no further action.

JAR:hae

c:      Deputy Wakefield
        Deputy Whitman
        Mr. Allar
        Case Record
        Mr. Rackovan

*I WAS IN Cell 332 fROM 4-27-00 ONTil 5-2-00*
*Which both INMATes WAS HEAVEY SMOKERS.*

| Refer to DC-ADM 804, Section VIII, for instructions on grievance system appeal procedures. | SIGNATURE OF GRIEVANCE COORDINATOR  *Jeffrey Rackovan* | DATE  *5/15/00* |

RECEIVED
MAY 0 4 2000
at Rockview
Superintendents Office

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA. 17001-0598

OFFICIAL INMATE GRIEVANCE

*EXHIBIT*
*B-12*

GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| MR. RACKOVAN | SCI- ROCKVIEW | 5-2-00 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| TERRANCE MONTAGUE #BZ-2761 | Terrance Montague | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| | A- 138 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

MR. RACKOVAN, ON 5-2-00 S. G.T CRUITS CALLED ME TO THE DESK AND TOLD ME THAT I HAVE TO MOVE INTO CELL 138 WITH ANOTHER HEAVY SMOKER, AND I ASKED S. G. T CRUITS WHO WAS IN CHARGE OF THIS MOVE AND HE TOLD ME MR. ZURYbidA NOW Why is THEY KEEP PUTTING ME IN CELLS WITH HEAVY SMOKERS KNOWING THAT I HAVE ASTHMAS AND ALREADY HAVE PROBLEMS breathing I HAVE two INHALERS I HAVE TO USE TO help ME breath better, so why would MR. ZURYbidA MOVE ME FROM ONE CELL WITH A SMOKER TO ANOTHER CELL with A SMOKER, by MR. ZURYbidA AND EVERYONE WHO KEEP PUTTING ME IN THESE CELLS WITH INMATES WHO SMOKE is PUTTING MY LIFE IN DANGER THIS is A VIOLATION OF MY EIGHTH AMENDMENT RIGHTS, THIS IS ALSO CRUEL AND UNUSUAL PUNISHMENT, MR. RACKOVAN, MAY YOU PLEASE do SOMETHING ABOUT THIS MATTER. HOW WOULD YOU FEEL IF YOU HAD ASTHMAS AND HAD

B. Actions taken and staff you have contacted before submitting this grievance:

MRS. MARGE MILLER - HEAD NURSE

LT. FAGER

CAPT HAMAND

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____          _____
Signature of Grievance Coordinator                    Date

**DC-804**
PART 1



COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**                    EXHIBIT
                                                 B-13          GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| MR. RACKOVAN | SCI. ROCKVIEW | 5-2-00 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| TERRANCE MONTAGUE #BZ-2761 | Terrance Montague | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| | A-138 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

USE TWO INHALERS TO help you breath, And They keep PUTTING MOU
in the CELL with HEAVY SMOKERS, AM WRITTING This GRIEVANCE TO
you in good faith, AM NOT TRYING TO Cause Any problems I JUST
NOT TRYing TO be IN A CELL with A SMOKER because I Already have
problems breathing plus I have TO USE TWO INhalers

THANK you
very MVCh.
Terrance Montague

B. Actions taken and staff you have contacted before submitting this grievance:

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____
Signature of Grievance Coordinator                                    Date

**DC-804**
**PART 1**



②

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS
### P.O. BOX 598
### CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**            *Exhibit*            **GRIEVANCE NO.**
                                          *B-13*

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| MR. RACKOVAN | SCI-ROCK VIEW | 5-2-00 |
| **FROM: (Commitment Name & Number)** | **INMATE'S SIGNATURE** | |
| TERRANCE MONTAGUE #BZ-2761 | Terrance Montague | |
| **WORK ASSIGNMENT** | **QUARTERS ASSIGNMENT** | |
| | A-138 | |

## INSTRUCTIONS:
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

USE TWO INhALERS TO help you breath, And They keep PUTTing MOU in the CELL with HEAVY SMOKERS, AM WRITTING This GRIEVANCE TO YOU iN good fAiTh, AM NOT TRYing TO CAUSE ANY problems I JUST NOT TRYing TO BE iN ACELL wiTh A SMOKER because I AlREADY hAVE problems bREAThiNg plus I hAVE TO USE TWO INhAlERS

THANK you very
VERY MUCh
Terrance Montague

B. Actions taken and staff you have contacted before submitting this grievance:

BZ-9561

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____
Signature of Grievance Coordinator                                    Date:

**WHITE** - Grievance Coordinator Copy        **CANARY** - File Copy        **PINK** - Action Return Copy        **GOLDENROD** - Inmate Copy

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
SCI-Rockview

*EXHIBIT B-14*

*5/4/00*

SUBJECT:   Consolidated Inmate Grievance
           Review System

TO:        *Montaque, b22761*
           *A Bldg.*

FROM:      *Jeffrey Rackovan*
           Jeffrey A. Rackovan
           Corrections Superintendent Assistant

I am returning your grievance because you have not complied with the following provision(s) of DC-ADM 804, dated October 20, 1994, Consolidated Inmate Grievance Review System.

_____As per Section V. Form-Grievances and Appeals A.  All grievances shall be in writing and in the format provided by the forms supplied at the institution.  Forms are available in the Block Office.

_____All grievances shall be presented individually.  Group grievances are prohibited (Section V.B.).

_____Only an inmate who has been personally affected by a Department or institution action or policy shall be permitted to seek review of a grievance (Section V.C.).

_____Grievances must be signed (Section V.C.).

_____All grievances must be presented in good faith.  They shall include a brief statement of the facts relevant to the claim.  The text of the grievance must be legible and presented in a courteous manner.

_____Grievances based upon different events should be presented separately, unless necessary to combine to support the claim.

_____Section VII Initial Review, B. states that any inmate grievance may be addressed to the Inmate Grievance Coordinator except issues related to the following:
1. Incoming Publications, DC-ADM 814.
2. Institution Disciplinary and Restricted Housing Procedure, DC-ADM 801.  Initial Review Decision includes the decision of the Hearing Committee and the PRC.
3. Hearing Committee Procedures, Community Services, DC-ADM 301.  Initial Review Decision includes the decisions of the Hearing Committee, PRC, Regional Director and Director of Community Services Division.
4. Policy and Procedures for Obtaining Pre-Release Transfer, DC-ADM 805.
5. Other kinds of issues for which review procedures have been previously established by administrative memorandum or policy statement.
Grievances related to the above issues shall be according to procedures specified in the directives listed and shall not be reviewed by the Inmate Grievance Coordinator.

_____Initial Reviews must be submitted within 15 calendar days after the events upon which claims are based (Section VI.B.2).

_✓_Block B. must be completed, as per the Instructions (#3) of the Official Inmate Grievance Form (DC-ADM 804, Part I).

JAR:tlk       *Mr. Zurybida does not keep track of which inmates are or are not*
              *smokers. You need to refer this matter to Mr. Aller. He has the*
              *authority to assist you. You will have to find a non-smoking*
              *cell partner but Mr. Aller can o.k. the move.*

State Correctional Institution



DC-804
PART 1
JUN 2 9 2000

OFFICIAL INMATE GRIEVANCE
Supt's Assistant's Office

*EXHIBIT B-15*

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

GRIEVANCE NO. ROC-0292-00

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| MR. RACKOVAN | S.CI-Rockview | 6-28-00 |

| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE |
|---|---|
| TERRANCE MONTAGUE #BZ-2761 | Terrance Montague |

| WORK ASSIGNMENT | QUARTERS ASSIGNMENT |
|---|---|
| | 137-A BLOCK |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

MR. RACKOVAN on 6-28-00 I got out The hole And They put me in with A smoker Knowing I don't smoke Because of me having ASTHMAS and I AlReady have problems Breathing I have to use Two Inhalees in My cell with me Now that I have to use To help me breath better. And this Jail Know I have ASTHMAS It's in my Medical Records, by them having me in the cell with A Inmate who smokes is putting my Health in Danger. I don't understand why They keep putting me in the cell with Someone who smoke, I Never Request To be Moved in with none of these Inmates, I Told The Block S.G.T Dale About this And He told me To go To My cell Before I be going back To The hole. I Also Told The Block LT. Decker he said he was going To See what he can do but he didn't do Anything Either, This go To show you that They don't care About my Health May you Please do something About This Matter.

THANK YOU
TERRANCE MONTAGUE

B. Actions taken and staff you have contacted before submitting this grievance:

S.G.T Dale - Block S.G.T

LT. Decker - Block Lieutenant

---

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Mr. Aller - Due 7/10

Jeffrey Rackovan    Conditions
Signature of Grievance Coordinator

*EXHIBIT B-15*

6/30/00
Date

Due 7/17

**DC-804**
PART II

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001**

**OFFICIAL INMATE GRIEVANCE**
**INITIAL REVIEW RESPONSE**

*EXHIBIT*
*B-16*

GRIEVANCE NO.    #ROC0292-00

| TO: (Name & DC NO.) Terrance Montague, BZ-2761 | INSTITUTION SCIR | QUARTERS Bldg A | GRIEVANCE DATE 06/28/00 Received 06/30/00 |
|---|---|---|---|

The following is a summary of my findings regarding your grievance:

This grievance has been reviewed with Mr. Allar, Unit Manager. You were scheduled to see Mr. Allar in the afternoon on June 29, 2000. You failed to show up, apparently going to the yard was more important to you than your celling situation. As of 1130 hours on July 5, 2000, Mr. Allar does **not** have any Voluntary Request to Change Cell Partners Form from you so it is clear that you have made no effort to resolve this situation by finding a compatible cellmate. Lastly, a check with the Inmate Employment Office verified that you do **not** have a medical restriction that requires you to be with a non-smoking cellmate. When you follow procedure and request a cellmate with whom you are compatible, Mr. Allar will make the change.

JAR:hae

c:    Deputy Wakefield
      Deputy Whitman
      Major Yancey
      Mr. Allar
      Case Record
      Mr. Rackovan

| Refer to DC-ADM 804, Section VIII, for instructions on grievance system appeal procedures. | SIGNATURE OF GRIEVANCE COORDINATOR Jeffrey Rackovan | DATE 7/17/00 |
|---|---|---|

*EXHIBIT B-2*

*get copy's*

*3*

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
SCI-Rockview
August 2, 2000

*EXHIBIT
B-17*

SUBJECT:   Appeal to Grievance #ROC0292-00

TO:        Terrance Montague, BZ-2761
           A Building

FROM:      R. W. Meyers
           Superintendent

This issue has been an ongoing one which has been addressed consistently by staff advising you there was no medical necessity for you to be in smoke-free environment. You had also been advised on many occasions that you needed to identify a non-smoking cell partner for unit staff to consider. Had you done so, and the cell partner was approved, you could have avoided having various inmates celled with you, including some that might smoke, for short periods of time. Mr. Allar reports you never provided him with any names to consider.

In the past week a physician's assistant for the medical contractor has recommended you be either moved to a non-smoking housing unit or placed in a single cell on A Building. The need for such a move is being reviewed by SCI-Rockview medical staff. If it is determined this move is medically necessary, you will be moved to a single cell until such time as you earn the appropriate custody level to be considered for a move to a non-smoking housing unit. If your condition has not changed and there is no medical necessity to provide you a single cell, you will again be responsible to find a compatible and appropriate cell partner. You should maintain contact with Mr. Allar regarding medical's decision and any pending move.

The initial review is modified to include the review of the physician's assistant recommendation.

RWM:tlk

c:    Deputy Wakefield
      Deputy Whitman
      Major Yancey
      Mr. Allar
      Mr. Lidgett
      Case Record
      Mr. Rackovan

**DC-804**
**PART 1**



**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**    *EXHIBIT*
*B-18*                          GRIEVANCE NO.    | ROC-0545-00 |

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| MR. PACKWAN | SCI- Rockview | 12-3-00 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| TERRANCE MONTAGUE  B7-9719 | Terrance Montague | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| | A- 142 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

ON 12-3-00 While WE WAS locked in for NOON COUNT S.G.T CURTIS AND officer WENTZ WAS SMOKING CIGARETTES while sitting WATCHING the PITTSBURGH & THE RADIERS game ON T.V. PLUS There NO SMOKING SIGNS ON THE WALL RIGHT WHERE S.G.T CURTIS AND officer WENTZ WAS SMOKING AT. officer WENTZ WAS SITTING RIGHT behind S.G.T CURTIS SMOKING these Officer's KNOW THEY AINT SUPPOSE TO BE SMOKING. SO WHEN I Said SOMETHING TO S.G.T CURTIS About him And officer WENTZ SMOKING S.G.T CURTIS Then SAID TO ME If YOU PUT A GRIEVANCE IN ON ME I'll MAKE SURE YOU STAY locked UP. SO NOW he THREATING ME because he KNOW he Ain't SUPPOSE TO be SMOKING OUT ON THE block.        NEXT PAGE →

B. Actions taken and staff you have contacted before submitting this grievance:

UNIT MANGER - MR. ALLAN

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Grievance Coordinator       *EXHIBIT B5*       Date

**DC-804**
**PART 1** 

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**    *EXHIBIT*
*B-79*    GRIEVANCE NO.

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| MR. RACKOVAN | SCI-Rockview | 12-3-00 |
| FROM: (Commitment Name & Number)  TERRANCE MONTAGUE  EZ-2761 | INMATE'S SIGNATURE  Terrance Montague | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT  A-142 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

WHAT MAKE THESE officers HAVE THE RigHT TO SMOKE ON block our AND THE INMATES CAN'T so these officer's Is JUST SAYING The Hell WITH The NO Smoke-up Sign that ON the WALL. THESE officer's WAS SITTING RigHT ACROSS FROM My CELL SMOKING. MY FAMILY Alone WITH HigHER AuTHORities HAVE been NOTIFiED AbouT THIS MATTER.

Thank You
VERY Much
Terrance Montague

B. Actions taken and staff you have contacted before submitting this grievance:

UNIT MANAGER - MR. ALTAR

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Grievance Coordinator    *EXHIBIT 66*    Date

WHITE - Grievance Coordinator Copy    CANARY - File Copy    PINK - Action Return Copy    GOLDENROD - Inmate Copy

**DC-804**
**PART 1**



**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA. 17001-0598**

**OFFICIAL INMATE GRIEVANCE**

EXHIBIT
B-20

GRIEVANCE NO. ROC-0545-0

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| ROBERT W. MEYERS | S.CI-Rockview | 12-20-00 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| TERRANCE MONTAGUE #BZ-2761 | Terrance Montague | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
|  | A-142 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

MR. MEYERS ON 12-3-00 While WE WAS LOCKED IN For NOON
COUNT S.G.T CURTIS AND Officer WENTZ WAS smoking
CIGARETTES WHILE Sitting WATCHING the PITTSburgh & The RAIDERS
gAME ON T.V PLUS There's NO smoking signs on The WALL Right WARE Sgt
CURTIS And Officer WENTZ WAS smoking at Officer WENTZ WAS Sitting
RIGHT behind S.G.T CURTIS smoking These officers Know They AiN't
SUPPOSE TO BE smoking, So when I said something TO S.G.T CURTIS
About Him And Officer WENTZ SMOKING S.G.T CURTIS thus said To ME IF you put
A GRIEVANCE In on ME I'll MAKE SURE you STAY LOCKED UP so now he Is THREAT
ME because he Know he AiN't SUPPOSE To be smoking out on The BLOCK, WHAT MAKE
These officer's HAVE The RIGHT TO SMOKE ON BLOCK out And The INM
CAN't SO These OFFICER'S Is JUST SAYING TO HELL(with you peo

B. Actions taken and staff you have contacted before submitting this grievance:

DEPUTY WAKEFIELD   MR. ALJAR
DEPUTY WHITMAN    MR. RACKOVAN
MAJOR YANCEY

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Grievance Coordinator                                    Date

**DC-804**
**PART 1**



## COMMONWEALTH OF PENNSYLVANIA
### DEPARTMENT OF CORRECTIONS
P.O. BOX 598
CAMP HILL, PA. 17001-0598

**OFFICIAL INMATE GRIEVANCE**    EXHIBIT
B-21        GRIEVANCE NO.    ROC-0545-0

| TO: GRIEVANCE COORDINATOR | INSTITUTION | DATE |
|---|---|---|
| MR. ROBERT W. MEYERS | SCI-ROCKVIEW | 10-20-0 |
| FROM: (Commitment Name & Number) | INMATE'S SIGNATURE | |
| TERRANCE MONTAGUE # BZ-206 | Terrance Montague | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT | |
| | A-148 | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:

WITH MY HEALTH KNOWING I HAVE A RESPIRATORY DISEASE WHICH
IS [ASTHMAS] I Already have problem breathing and by This S.O.
Alone with officer WENTZ SMOKING AND NO SMOKING SIGNS ON THE W
Show That They don't CARE About The no smoking policy, or The PEOPLE who don't
SMOKE. These officer was sitting Right Across from my cell where SMOKE wa
coming in my cell S.O.T CURTIS did Admit smoking in a non-smoking AR
where There is NO SMOKING SIGNS SO why wasn't These Two officers pun
For SMOKING IN A NON-SMOKING AREA if it was a INMATE he would get a writ
And go To The hole. WHAT WAS There PUNISHMENT NOT TO do it AG
I would Like something done About This MATTER. MY FAMIL
None with Higher Authorities Have been NOTIFIED ABOUT The
MATTER.                                        NICK TAKEN UP ON
                                               FURTHER NOT

B. Actions taken and staff you have contacted before submitting this grievance:

Deputy WAKEFIELD   MR. HINE
Deputy WHITMAN     MR. RACKOVAN
MAJOR YANCEY

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Grievance Coordinator                          Date

WHITE - Grievance Coordinator Copy    CANARY - File Copy    PINK - Action Return Copy    GOLDENROD - Inmate Co

EXHIBIT
B-22

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**
**P.O. BOX 598**
**CAMP HILL, PA 17001-0598**

FOR OFFICIAL USE ONLY

ROC-0961-01

GRIEVANCE NUMBER

**OFFICAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: |
|---|---|---|
| MR. RACKOVAN | SCI-Rockview | 2-3-01 |

| FROM: (INMATE NAME & NUMBER) | SIGNATURE of INMATE: |
|---|---|
| TERRANCE MONTAQUE B8-2761 | Terrance Montague |

| WORK ASSIGNMENT: | HOUSING ASSIGNMENT: |
|---|---|
| KITCHEN | A-102 |

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B the specific actions you have taken to resolve this matter informally. Be sure to include the identity of staff members you have contacted.

**A.** Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages. ON 2-3-01 WHEN I WENT TO A-BLOCK DESK TO GET MY LAW-LIBRARY PASS, S.G.T BREZLER WAS SMAKING A CIGARETTE AND WHILE I WAS STANDING THERE S.G.T BREZLER deliberately BLEW SMOKE IN MY FACE TWICE before HE EVEN GAVE ME MY LAW-LIBRARY PASS, I ALREADY HAVE PROBLEMS bREATHING BECOUSE OF ME hAVING ASTHMAS I ALREADY HAVE TO USE TWO INHALERS TO HELP ME bREATH hAS IT IS, THIS IS CRUEL & UNUSUAL PUNISHMENT, THE ACTION by S.G.T BREZLER IS A fORM OF HARASSMENT AND IS CAUSING ME MENTAL PAIN & SUFFERING, MY FAMILY HAS BEEN NOTIFIED ABOUT THIS MATTER & SO WILL higher AUTHORITIES,

Thank you VERY MUCH

Terrance Montague

**B.** List actions taken and staff you have contacted, before submitting this grievance. Attach the copy of the **DC-135A** with the staff member's response of your informal resolution attempt.

LT. YANCY

MR. IHHAR - UNIT MANGER

Your grievance has been received and will be processed in accordance with DC-ADM 804.  LT. AHAR - 2/13

Jeffrey Rackovan  Cont this in       2/6/01

Signature of Facility Grievance Coordinator                                    Date

DUE: 2/21

**WHITE** - Facility Grievance Coordinator Copy    **CANARY** - File Copy    **PINK** - Action Return Copy    **GOLDENROD** - Inmate Copy.

Revised
July 2000

get car 7 mg 3

| Date/ Time | Prob # | Discipline Abbreviation | Remarks Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| | | | A: Asthma |
| | | | Costochondritis |
| | | | P: Pt/m allergic to ASA  So will put on coarse of low dose Prednisone x 1 week |
| | | | ② Moist heat |
| | | | ③ Will talk c̄ M. Miller about this I/m non smoking block status and what else medical needs to do. |
| | | | CHERYL KIMMEN PA-C |
| 7/8/00 0945 | ✓ | PAC | Talked c̄ M. Miller who contacted Unit manager to have I/m moved to non-smoking block |
| | | | CHERYL KIMMEN PA-C |

EXHIBIT C1

# PHYSICIAN'S ORDERS

3 copy's

| Inmate Name: | MONTAGUE, TERRANCE |
| Inmate Number: | B72361 |
| DOB: | |
| Insatation | 3/10/1971 |

Drug Allergies:
Hydrocortisone CR - ASA

Self-Medication Program ☐ Yes    ☐ No

| Date/ Military Time | Prob # | DO NOT USE THIS SHEET UNLESS A RED NUMBER SHOWS    3 |
|---|---|---|
| 7/5/00 0930 | 5 | ① Mineral Oil (heavy) 30cc po qhs 130days LP <br> ② Schedule ē Dr. Symons Re: I/m request <br> By me <br> BRIDGET FINN PA-C |
| 7/11/00 0930 | A | CNX 480 - Non smoking block , bottom bunk <br> Cu <br> CHERYL KIMMEN PA-C |
| 7/18/00 0755 | A | ① Prednisone 20mg po QD X 7days <br> ② Moist heat QID <br> ③ Cont. ē current use of MSI <br> ④ Will contact M Miller RN about non smoking status <br> Cu <br> CHERYL KIMMEN PA-C |

**PLEASE USE BALL POINT PEN ONLY**

EXHIBIT C 2

3 copys

# PROGRESS NOTES

[ ] Outpatient                                                          [ ] Inpatient

| Date/Time | Prob # | Discipline Abbreviation | Remarks — Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| 7/13/00 3x c | | Rn | Block A called for own line & this inmate did not comp to dispensary. Block called @ 09⁴⁵ am. Still no show. |
| 7/18/00 0730 | A Q | PAC | S: Continues to c/o trouble breathing & sharp pain & deep inspiration). Also c/o cough. All of which is worse when he is on the block because his cell mate smokes heavily. Has been here & this c/o before — DC480 have been filed x2 & the rec. that this 1/m should be on a non smoking block. This 1/m claims that his unit manager has called over here and was told by medical that nowhere on his chart did it state he should be on non smoking block therefore he has not been moved from current cell. O: VS 480x3 lungs: CTA B/L  Ø adventitious breath sounds. ⊕ pain to palp costochondral area heart: RRR Ø m/g/r Ext: Ø cyanosis/clubbing cap refill brisk |

**Progress Notes**
**Commonwealth of Pennsylvania**
**Department of Corrections**
**DC-472**

Inmate Name: Montague, Terrance

Inmate Number: BZ2761

DOB: 3/10/71

Institution: SCI Rockview

EXHIBIT C3

CHERYL K..... RN

got a copy of this
3

# PROGRESS NOTES

[ ] Outpatient                                                    [ ] Inpatient

| Date/ Time | Prob # | Discipline Abbreviation | Remarks Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| ~~(illegible)~~ | | | S: Still hasn't been moved to nonsmoking |
| ~~(illegible)~~ | | | block |
| | | | O: NAD |
| | | | lungs CTA |
| | | | A. Asthma |
| | | | P. Consulted c̄ M. Miller nurse sup. again |
| | | | who verified that she personally called |
| | | | block/employment/etc. and also copied |
| | | | medical clearance form and delivered |
| | | | to counselor. M. Miller recommended |
| | | | to I/m that he write to Deputy/Superintend. |
| | | | |
| | | | |
| | | | CHERYL KIMMEN PA-C |
| 7-28-00 | | R | Med renewal          B LEHHURT PA-C |
| 1400 | | ✓ | |
| | | | |
| 7-20-00 | | 0715 | Presented to window for tegretol renewal. MAR |
| | | | revealed that he just picked up #135 on 7-18-00. |
| | | | Instructed to bring old card back before new issued. |
| | | | Obviously non-compliant c̄ tx/tld. This inmate needs to |
| | | | be single dosed.          Smullany w |

**Progress Notes**
**Commonwealth of Pennsylvania**
**Department of Corrections**
**DC-472**

Inmate Name:                     MONTAGUE, TERRANCE

Inmate Number:                   BZ2761

DOB:

Institution:                     3/10/1971

EXHIBIT

EXHIBIT
D1

## Affidavit

I am a prisoner at Rockview prison my name is Willie Boyd and my number is Ej 2528. I live on a non-smoking block called BA-block. I was sent to the RHU. unit because I would not let a man movie in my cell who smokes cigarettes. on 4-13-01 at 10:00 And again on August 8, 2001 a man trying to move in my cell who smokes cigarettes. It is a non smoking block but on this block people are smoking and the staff know it

Willie Boyd Ej 2528
9-4-01 at 10:30

I certify under penalty of perjury that the forgaing is true and correct

28 U.S.C. Sec. 1746

# AFFADAVIT

I TERRANCE MONTAGUE, BZ-2761 SWEAR THAT WHAT I'M WRITING IS THE TRUTH TO WHAT I'M SAYING. INMATES ALONE WITH GUARDS STILL SMOKE ON THE NON-SMOKING block. THE DEPARTMENT OF CORRECTIONS HAVE A NON-SMOKING POLICY THAT THEY REFUSE TO ENFORCE AND BY THE DEFENDANTS REFUSEING TO ENFORCE THERE NON-SMOKING POLICY OR discipline THE INM AND GUARDS THAT Violate it. BY PLAINTIFF BEING ON BA WHICH IS SUPPOSE TO BE A NON-SMOKING BLOCK WHERE INMATES AND GUARDS STILL SMOKE IS STILL EXPOSURINE PLAINTIFF TO SECONDHAND INMATES STILL SMOKE IN THERE CELLS ON THE NON-SMOKING BLOCK

I certify under penalty of perjury that the foregoing is TRUE AND CORRECT.

28. U.S.C. SEC. 1746

_Terrance Montague_

TERRANCE MONTAGUE

EXHIBIT
D2

ORIGINAL
AND only one
I HAVE

EXHIBIT
E-1

AFFADAVIT

I DERRICK CLAY, BW1477 SWEAR THAT WHAT I'M WRITING IS THE TRUTH TO WHAT I'M SAYING.

ON 5·3·2000, I WAS INFORMED BY A·BLOCK STAFF THAT I WAS GETTING A CELLMATE.

I WAS ALREADY HOUSED ALONE IN CELL # 1038, SO THEN THAT'S WHEN INMATE TERRANCE MONTAGE MOVED IN AN INFORMED ME OF HIS MEDICAL CONDITION WHICH IS <u>ASTHMAS</u>.

KNOWING HE HAVE <u>ASTHMAS</u> AND PROBLEMS BREATHING ALREADY. I DON'T UNDERSTAND WHY THEY WOULD PUT A NON-SMOKER IN WITH A SMOKER, I DERRICK CLAY NOR DID INMATE TERRANCE MONTAGUE PUT IN PAPER- WORK TO LIVE TOGETHER THEY JUST PUT TERRANCE MONTAGUE INTO MY CELL

THERE WERE OTHER CELLS THEY COULD OF PUT INMATE MONTAGUE INTO

THE STAFF OF A·BLOCK IGNORED INMATE MONTAGUE MANY REQUEST TO MOVE OUT OF A SMOKERS CELL.

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT.
28 U.S.C. sec. 1746

M. Derrick Clay BW14

ORIGINAL
AND ONLY ONE
I HAVE

E - 2

# Affidavit

I, Eugene Simms, affirm that the following information is true to the best of my ability.

On July 31, 2000 I requested that the Unit Manager of A Block, Mr. Jack Alar, move me out of the cell with Mr. Terrence Montague as a result of Mr. Montague's persistent complaints of his enability to breath due to me smoking. Initially, I was housed alone in cell number 1037 alone however, I was told by block Lt. Decker that later on that day I'd be getting another cellmate. Mr. Montague moved in and informed me of his medical condition and asked me if I would not smoke due to his enability to breath as a result of the smoke. There were many other single cells available for Mr. Montague to move into however the staff of A Block ignored his many request to

3 copys

1800 OAKLAND AVENUE · INDIANA, ____
412-465-6307 · 1-800-282-6307 · FAX · ____-2045
GREENSBURG DOT

## MEDICATION ADMINISTRATION RECORD

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RIAVIL 2-25 TABLET  11/07/95 AMITRIP/PERPHEN 25-2 TAB TAKE ONE TABLET ORALLY AT BEDTIME  N° R/O | 7PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| ESYREL 150MG TABLET  11/10/95  12-7-95 TRAZODONE 150MG TABLET TAKE ONE TABLET ORALLY AT BEDTIME | 7PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| THEO-DUR 200MG TABLET S 11/13/95 12-23 THEOPHYLLINE 200MG SR TAKE 1 TABLET ORALLY TWICE DAILY | 7AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 7PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| TEGRETOL 200MG TABLET  11/03/95 CARBAMAZEPINE 200MG TAB TAKE 1 TABLET ORALLY THREE TIMES DAILY | 7AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 3PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 7PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MAXAIR 0.2MG AEROS W/AD 01/11/95  12-7-96 TAKE 2 PUFFS FOUR TIMES DAILY. | 7AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 12PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 3PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 7PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| /13 Lithobid 900 mg + BID × | 2/21/95  7 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 3 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 7 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| -13 Advil II TID  11-27-95 × 14 days | 7 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 3 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 7 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| -13 Pseudophylline to R 4m BID × 6 weeks | 3³⁰pm | | | | | | | | | | | | | | | | | | | | then 12-6 12-1 + Re-evalute 12 |
| Influenza Virus Vaccine | 1pm | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| STARTING FOR  11/01/95 | THROUGH  11/30/95 | | PAGE  1 |
|---|---|---|---|
| PHYSICIAN  AYOUB, OMAR | | TELEPHONE NO.  — | MED. RECORD |
| ALT. PHY. | | ALT. TELEPHONE | |
| ALLERGIES  N/K/A | | REHABILITATIVE POTENTIAL | |
| DIAGNOSIS ____ asthma ; L-3 Strain ; ____ | | | 00/00/00 |
| MEDICAID NUMBER | MEDICARE NUMBER | COMPLETE ENTRIES CHECKED  BY: | |
| | | | TITLE: |
| PATIENT  MONTAQUE-TER-BZ2761 | | 00/00/00 | PATIENT CODE  GMONBZ | ROOM NO.  J18 | BED | FACILITY  GB99 |

3 copies

| Date/ Time | Prob # | Discipline Abbreviation | Remarks Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| 7/10/00 10³⁰ | | ft | Blood filled of 0900 - NS w/ fish l/w hx |
| | | | |
| 7/1-00 0920 | | PAC | S: H/o asthma - exac. by being on smoking block. Should be on nonsmoking block. |
| | | | O: NAD lung CTA/Bil |
| | | | A: asthma |
| | | | P: DC/UP revised - Non smoking block |
| | | | CHERYL KIMMEN PA-C |

EXHIBIT F2

3 copys

# MEDICAL CLEARANCE FORM

**TYPE**
[ ]  Initial Classification          [ ]  Annual Physical          [X]  Revision due to change in Health Status
[ ]  Parole Violator, CCC returns,   [ ]  Biennial Physical        [ ]  Boot Camp Clearance
       returned escapees, ATA, HVA,
       with more than six months absence

**FOOD SERVICE**

[X]  Is approved for food service.          [ ]  Is **not** approved for food service.

**MEDICAL CLEARANCE** (Please Check as appropriate:)

Is medically cleared without limitations for:   [ ] Regular Housing   [ ] Employment   [ ] Activities   [ ] Boot Camp

Is medically cleared with the following limitations:

Housing: _Bottom Bunk / Bottom Tier_
_Should be on non-smoking_
_block_

Employment: _No climbing, house machinery_
_Use Siezure precautions_

Activities: _No contact sports_

Other: _____

Is not medically cleared for:   [X] Regular Housing   [X] Employment   [X] Activities   [ ] Boot Camp

_B Lim PPC_ _3/1/00_ _1105_
Signature                         Date/Time

BRIDGET FINN

**WHITE** - Medical Records          **CANARY** - Inmate Employment Office          **PINK** - Activities

**Medical Clearance Form**
**Commonwealth of Pennsylvania**
**Department of Corrections**
**DC - 480**

Inmate Name: _Montague, Terrance_

Inmate Number: _BZ2761_

DOB: _3-10-68_

Institution: _SCI-Rockview_

EXHIBIT #3

3 COPYS

# MEDICAL CLEARANCE FORM

**TYPE**
[ ] Initial Classification                [ ] Annual Physical                [X] Revision due to change in Health Status
[ ] Parole Violator. CCC returns,        [ ] Biennial Physical            [ ] Boot Camp Clearance
     returned escapees. ATA, HVA,
     with more than six months absence

**FOOD SERVICE**

[X] Is approved for food service.          [ ] Is **not** approved for food service.

**MEDICAL CLEARANCE** (Please Check as appropriate:)

Is medically cleared without limitations for:   [ ] Regular Housing    [ ] Employment    [ ] Activities    [ ] Boot Camp

Is medically cleared with the following limitations:

Housing: _Non smoking block_
_Bottom bunk 2° S2_

Employment: _No climbing, No work around heavy machinery_
_fire etc.  S2 precautions_

Activities: _No contact sports_

Other: _____

Is not medically cleared for:   [X] Regular Housing   [X] Employment   [X] Activities   [ ] Boot Camp

_CHERYL KIMMEN PA-C_                7/11/00   0925
Signature                                          Date/Time

**WHITE** - Medical Records          **CANARY** - Inmate Employment Office          **PINK** - Activities

**Medical Clearance Form**
**Commonwealth of Pennsylvania**
**Department of Corrections**
**DC - 480**

Inmate Name: _Montague Terrance_

Inmate Number: _BZ 2761_

DOB: _3-10-68_

Institution: _Fairview_

EXHIBIT E 4

DIDN'T get A copy of

3 COPY'S

# MEDICAL CLEARANCE FORM

**TYPE**
[ ] Initial Classification       [ ] Annual Physical       [X] Revision due to change in Health Status
[ ] Parole Violator, CCC returns,    [ ] Biennial Physical      [ ] Boot Camp Clearance
     returned escapees, ATA, HVA,
     with more than six months absence

**FOOD SERVICE**

[X] Is approved for food service.       [ ] Is **not** approved for food service.

**MEDICAL CLEARANCE** (Please Check as appropriate:)

Is medically cleared without limitations for:  [ ] Regular Housing    [ ] Employment    [ ] Activities    [ ] Boot Camp

Is medically cleared with the following limitations:

Housing: _Non smoking block._
_Bottom bunk do to seizure disorder._

Employment: _No climbing. No work around heavy machinery_
_fire, etc. Seizure precautions_

Activities: _No contact sports._

Other: _____

Is not medically cleared for:   [✓] Regular Housing    [✓] Employment    [✓] Activities    [ ] Boot Camp

CAROL A. _____ M.D.
           Signature M.D.                 Date/Time   8-2-00 1640.

**WHITE** - Medical Records       **CANARY** - Inmate Employment Office       **PINK** - Activities

**Medical Clearance Form**
**Commonwealth of Pennsylvania**
**Department of Corrections**
**DC - 480**

EXHIBIT F5

| | |
|---|---|
| Inmate Name: | MONTAGUE, TERRANCE |
| Inmate Number: | BZ2761 |
| DOB: | |
| Institution: | 3/10/1971 |

3 copy's

# PHYSICIAN'S ORDERS

MONTAGUE, TERRANCE

B22761

3/10/1971

Drug Allergies:
Hydrocortisone cream    ASA

Self-Medication Program ☐ Yes    ☐ No

| Date/ Military Time | Prob # | DO NOT USE THIS SHEET UNLESS A RED NUMBER SHOWS |
|---|---|---|
| 3/29/00 1100 | A | ① Albuterol MDI 2 puffs QID pn X30d RFX5 |
| | | ② Mineral oil (heavy) 30cc po q hs X30d RFX2 |
| | | 3/29/00 1110 |
| | | SY 3/29/00 JOHN SYMONS MD   CHERYL KIMMEN RA-C |
| | | |
| 3/1/00 1100 | A | ① Add Beclovent Inh III puffs bid X30d |
| | | ② T po fluids |
| | | ③ DC480 revised |
| | | BRIDGET FINN PA C |
| 5-18-00 1025 | #1 #8 | ① ok for kitchen |
| | | BILLIE BURK PA-C |

**PLEASE USE BALL POINT PEN ONLY**

3 COPYS

# PHYSICIAN'S ORDERS

MONTAGUE, TERRANCE

BZ2761

3/10/1971

Drug Allergies:  ASA - Hydrocortisone Cream

Self-Medication Program ☐ Yes    ☐ No

| Date/ Military Time | Prob # | DO NOT USE THIS SHEET UNLESS A RED NUMBER SHOWS |
|---|---|---|
| 3/13/00 D | | D/C ELAVIL |
| 3/13/00 1120 | | ELAVIL 100 mg po q HPM |
| | | 25 mg po q 4PM ⎫ X 90 days |
| | | 25 mg po q HS ⎭ |
| | | KEVIN M. BURKE M.D. |
| 3/14 15:07 | | Proventil inhaler 2 puff q ID PRN |
| | | D/C Maxair |
| 3-14-00 | | ELIAS RIFKAH, MD |
| 3/14/00 1520 | | Elbow pad - wear reversed X 6 mos at night |
| | | Wrist Brace ® Hand X 6 mos |
| | | Motrin 600 mg 30 cc po qd X 180 days |
| | | F/U General Medical Clinic |
| 3/14/00 1600 | | ® Ulnar Neuropathy |
| | | JOHN SYMONS MD |

PLEASE USE BALL POINT PEN ONLY

EXHIBIT E7

3 COPY'S

# PHYSICIAN'S ORDERS

Montague, Terrance
B 32761
3/10/68
SCI Rockview

_CNKDA_
Drug Allergies:

Self-Medication Program ☐ Yes   ☐ No

| Date/ Military Time | Prob # | DO NOT USE THIS SHEET UNLESS A RED NUMBER SHOWS |
|---|---|---|
| 1/5/99 0830 | A | ① Maxair MDI ⨱ II puffs po q 4-6° x30 days ② Please schedule ⨱ Dr Symms (I/m requesting P.T.) _dur_ ③ stretching exercises demonstrated  BILLIE BURK PA-C |
| 7/22/99 1/20 | | Albuterol MDI I ii puffs qid PRN x 180 days _Asthma clinic_ Advise pt that Inhaler has been ordered ⨱ he should pick it cap Regretol level F/U my line 2-4 wks · R̄ [illegible] 2/5/99 [illegible] |
| 7/28/99 0620 | C | ① Please refer to education nurse for medication compliance ⨱ Seizure meds  BILLIE BURK |

**PLEASE USE BALL POINT PEN ONLY**

EXHIBIT #8

3 copies

| Date/Time | Prob.# | Discipline Abbreviation | Remarks Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| 4/18/00 | | | Psychiatry |
| /h:/0 | | S/O | No major c/o |
| | | | Wants to continue medication |
| | | | On good spirits |
| | | | ⊖ Suicide feelings |
| | Ⓓ | A: | Depression |
| | | P: | Continue Rx |
| | | | See psych entry                     KEVIN W. BURKE M.D. |
| 4/28/0 | | | Issued cockup splint + elbow sleeve mnW |
| 3/4/00 1100 | A | POC | S: c/o ↑ difficulty breathing |
| | | | not always relieved c̄ Maxxtron |
| | | | States this is worse when on |
| | | | block 2° cigarette smoking, which |
| | | | he has always had problem with |
| | | | O: AAO ×3    P-85  SPO₂-97% |
| | | | lungs CTA ṗ✗/♭/✗ |
| | | | Heart RRR s̄ m/g/r |
| | | | Ext - ∅ E/c/c |
| | | | A: asthma |
| | | | P: See Orders |
| | | | BF                     BRIDGET FINN PA |
| | | | |
| | | | |
| | | | |
| | | | |

EXHIBIT G9

3 copy's

# PROGRESS NOTES

[ ] Outpatient                                                [ ] Inpatient

| Date/ Time | Prob # | Discipline Abbreviation | Remarks Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| 5-7-00 0815 | A | Pm | S: concerned about Asthma |
| | | | Doing Armacort prn |
| | | | O: A&O x 3, NAD        P: 72 |
| | | | Skin: warm, dry, diaphoresis |
| | | | Eyes: wheezing |
| | | | exhalation |
| | | | A: Asthma |
| | | | P: Educated on proper use to |
| | | | use Armacht        Reassured |
| | | | S.L. prn |
| | | | BILLIE BURK PA-C |
| 5/16/00 1645 D.E | MD | Psychiatry | No show |
| 5-18-00 1025 | AS | Pm | S: culinary clearance |
| | | | O: Eyes: Ø jaundice |
| | | | UE: Ø rashes:        Pain R 5th PCP— |
| | | | hx of fx |
| | | | Abd: Ø HSM |
| | | | A: culinary clearance    Pt OK for Kitchen |

Progress Notes
Commonwealth of Pennsylvania
Department of Corrections
DC-472

Inmate Name: Montague Terrance

Inmate Number: BZ 2761

DOB: 3-10-68

Institution: Rockview

BILLIE BURK

EXHIBIT E 10

3 cc/ms

# PROGRESS NOTES

[ ] Outpatient                                                                                    [ ] Inpatient

| Date/<br>Time | Prob<br># | Discipline<br>Abbreviation | Remarks<br>Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| 5/18 | A | PA-C | Resched asthma/tx clinic |
| 15:20 | C | | |
| | | | *[signature]* |
| | | | CHERYL KIMMEN |
| | | | PA-C |
| | | | |
| | | | |
| 5/23/99 | | MD | S- c/o chronic H/A |
| | B | | + pain (R) hd - past hx of |
| | 2 | | ORIF 5th meta carpal. |
| | | | O- NAD |
| BWAC | | | (R) Hd - show old scar |
| | | | v non- |
| | | | A) Chron H/A - probably post |
| | | | P) concussive |
| | | | S/P ORIF (R) + th meta carpal |
| | | | - still painful - may |
| | | | require Physical Therapy |
| | | | Will schedule r/w c PA-C |
| | | | Line to eval - will he out |
| | | | of BWAC then |
| | | | Naprosyn 500 BID in the |
| | | | mean time. |
| | | | JOHN SYMONS MD |
| | | | |

**Progress Notes**
**Commonwealth of Pennsylvania**
**Department of Corrections**
**DC-472**

Inmate Name: *Montague Terrace*

Inmate Number: BZ 2761

DOB: 3/10/68

Institution: SCI Rockview

EXHIBIT E 11

3 copy's

| Date Ordered | Treatment or Medication | Diet |
|---|---|---|
| 12/29/92 | Admit to POC cell #9 | |
| | q̄ 15' min watch | |
| | Medications: | |
| | Haldol 5 mgm B.D | |
| | Cogentin 1 mgm B.D | |
| | Sinequan 100 mgm @ HS | |
| | May have blanket, mattress, clothing. | |
| | p.o. Dr. Russek / M. Strau u. | |
| 12-30-92 | 24° ✓ Wanner 0.330     Edward Russak. M.D | |
| 12-30-92 10⁵⁰ AM | Theodur 200mg BID x 15 days x 1 refill | |
| | Maxair inhaler ii puffs TID PRN wheezing Eiger (oral) | |
| | x 15 days x 1 refill | |
| | Theophylline blood level 1-11-93 | |
| 12-31-92 | 0445 = 24° ✓ (Wanner R) | |
| 1-1-93 | May D/C AMU today | |
| | Edward Russel. M.D. | |

DC-69

COMMONWEALTH OF PENNSYLVANIA

DEPARTMENT OF CORRECTIONS

PHYSICIANS' ORDERS

All Orders Must Be Signed By Physician

Inmate Identification

D.O.B. 3/10/68

SSN 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

Inst. No. BZ 2761

Name MONTE A QUE

EXHIBIT F12



**POLICY STATEMENT**
Commonwealth of Pennsylvania • Department of Corrections

| Policy Subject: | Policy Number: |
|---|---|
| **SCI-ROCKVIEW SMOKING POLICY** | **15.3.6 ROC 1** |

| Date of Issue: July 28, 1994 Reissue October 1, 1998 | Authority: R. W. Meyers | Effective Date: 8/22/94 New Effective Date:10/1/98 |
|---|---|---|

## I.    AUTHORITY

This policy is developed under the authority of the Secretary of Corrections delegated to the Superintendent for the issuance of this local policy.

## II.    PURPOSE

To establish a SCI-Rockview smoking policy consistent with Department of Corrections Policy 15.3.6, "Smoking in Department of Corrections Building and Facilities" (5/20/94) and Management Directive 205.19, Smoking in Commonwealth Buildings/Facilities (7/01/97). This policy is designed to foster the health, safety and personal preference of all. It is not intended to totally prohibit smoking in SCI-Rockview buildings and structures, but does restrict it to specified areas and under certain criteria.

Smoking poses a significant risk to the health of the smoker and non-smoker. It can damage sensitive technical equipment and can be a safety hazard. In sufficient concentration, Environment Tobacco Smoke (ETS) can be hazardous to non-smokers in the work environment and may be harmful to individuals with heart and respiratory diseases or allergies related to tobacco smoke. Environment Tobacco Smoke (ETS) or exposure to secondhand smoke is expected to cause an additional 53,000 deaths annually in the United States, primarily due to lung cancer and heart disease.

Smoking accounts for over 400,000 deaths annually in the United States, and this policy is provided to assist employees, the public and inmates in finding a reasonable accommodation between those who do not smoke and those who do. It demonstrates the institution's desire to improve the health of all employees and inmates.

The purpose of this policy is to promote a safe and healthful environment for inmates, employees and the public associated with this institution. It is intended to reduce the health risks associated with exposure to Environment Tobacco Smoke while minimizing the inconvenience to individuals who smoke.

## III.    APPLICABILITY

This policy applies to all employees, guests, contractors, vendors, public visitors and inmates who enter or work within SCI-Rockview buildings and other enclosed structures owned or leased by the institution. This includes but is not limited to this facility, administrative offices, state vehicles and adjoining property. It does not include state-owned residences that serve as the private/primary place of residence for state employees.

*Exhibit B1*

Smoking - Defined as a lighted cigar, cigarette, pipe or any other lit tobacco product. The act of emitting or exhaling smoke from a cigarette, cigar, pipe or other tobacco product.

Environment Tobacco Smoke (ETS) - Secondhand smoke, involuntarily inhaled, passive smoking of cigarette/cigar smoke.

Smoke Free - Prohibited from the use of smoking tobacco products, a no smoking area.

Housing Area - Inmate living quarters (i.e. cells, dormitories, rooms or other resident occupancy areas).

Smokeless Tobacco - Tobacco that is not lit but chewed or introduced into the mouth.

Non-smoker Preference - When a conflict exists between the preferences of smoker and nonsmoker, the non-smoker's preference shall prevail.

V.    **POLICY**

It is the policy of SCI-Rockview to respect the preferences of both the non-smoker and the smoker in all of the institution buildings. This shall be interpreted to also include Commonwealth vehicles. When these preferences conflict, the preferences of the non-smoker shall prevail. The right of an individual to protect his or her health shall take precedence over an individual's desire to smoke. Smoking shall be permitted/prohibited as specified herein.

The policy shall be consistent with the Commonwealth of Pennsylvania regulations covering smoke in buildings and facilities (Management Directive 205.19 dated 7/01/97 and Administrative Circular 97-14 dated 4/18/97). It is the policy of the SCI-Rockview to provide and maintain a smoke free workplace. It is also recognized that implementing a smoke free policy on the inmate population may have negative ramifications. Therefore, Facility Managers may create and maintain non-smoking inmate housing units and or celling arrangements.

VI.    **PROCEDURE**

A.    The following areas and/or buildings will be considered as **NON-SMOKING**.

    1.    Armory

    2.    Activities Trailer - to include Weight Room

    3.    Chapel

    4.    Correctional Industries:
        a.    Apple Storage Building
        b.    Cannery - **to include smokeless tobacco products**
        c.    Office Area
        d.    Barns
        e.    Tractor Shop
        f.    Warehouse

    5.    DW Control Building

    6.    Commissary



EXHIBIT
G2

       a.      Auditorium
       b.      Boxing Room
       c.      Dining Halls - **to include smokeless tobacco products**
       d.      Food Preparation Area - **to include smokeless tobacco products**
       e.      Music Room
       f.      Staff Dining Hall - **to include smokeless tobacco products**

8.     Commissioned Officer's Locker Room
9.     Education Building
10.    Forestry Offices
11.    Laundry - Inmates and staff may <u>only</u> smoke in the outer area of the officer's desk on the north side or the outside of the northside exit. Staff may only smoke during their designated break periods while assigned in the Laundry building area.

12.    Mailroom

13.    Maintenance Department:
       a.      All Shops
       b.      Boilerhouse
       c.      Greenhouse
       d.      Lawn Shop
       e.      Office
       f.      State Garage
       g.      Water Filtration Plant

14.    Property Trailer
15.    Rotunda - All Floors
16.    Storeroom
17.    Telephone Room - to include PBX Room

18.    Treatment Building - All Floors
       a.      Staff wishing to smoke outside of the Treatment Building must only use the compound exit for this purpose during their designated break periods.

       b.      Visiting Room - Guests and inmates may only smoke in the outside visiting yard area when the visiting yard is open.

B.    The following areas will be considered as areas authorized for smoking provided that the preference of a non-smoker would prevail.

1.     Vending Room <u>only</u> of the non-commissioned officers' locker room.

2.     Commonwealth vehicles - provided there is no occupant(s) as a non-smoker as preference would prevail. Any employee who wishes to smoke must first announce his/her intention and seek consent from the other occupants prior to the initiation of smoking.

3

*Exhibit*
*G3*

cigars and/or pipes may only leave their assigned areas and/or office for this purpose during their assigned breaks.

C.    Inmate Housing Areas

1.    A Building - Smoking is permitted in cell areas and in blockout areas from Cell #13 to the end of the level excluding the Counselors/Unit Manager's area during work hours and from Cell #25 to Cell #31 to include the far west end. There is no smoking in telephone areas.

2.    B Building

a.    B-A will be a non-smoking unit.

b.    B-B - Smoking will be permitted in cells only. There is no smoking in the blockout area, levels or officer's desk area.

c.    B-C - Smoking will be permitted in cells and the TV section from Level 1 cells 19/20 to cells 9/30. Smoking will not be permitted in the Group Room, telephone areas, upper level, stairs, clothing room, showers or officer's desk area.

3.    C Building

a.    C-A - Smoking is permitted in cell areas and will only be permitted on Level 1 of the blockout from the front entrance of the unit to the steps toward the office. There will be no smoking in telephone areas.

b.    C-B - Smoking is permitted in cell areas and will only be permitted on Level 1 of the blockout from cells 9/50 to 20/35. There will be no smoking in telephone areas.

4.    D Building - Smoking is permitted in cells and blockout areas except the front half of Level 1 (Cell 1-13). Inmates in the AC Unit of D Building may smoke as noted in Administrative Directive 802. There will be no smoking in telephone areas of the unit.

5.    E Building - A Section will be non-smoking while B Section will be smoking. Smoking is not permitted in the Day Room.

6.    F Building - B Section will be non-smoking while A Section will be smoking. Smoking is not permitted in the Day Room.

7.    G Building (RHU) - Smoking is permitted in cells only and as established in Administrative Directive 801 and the Operating Procedures and Regulations of the RHU. The pantry area of G Building will be non-smoking as is the office area.

8.    Forestry Unit and Area - All trailers housing inmates and offices at the Forestry Unit are designated as non-smoking. Inmates will be permitted to smoke in the TV Room

4

EXHIBIT
64

Obviously, the kitchen and dining room areas that are housed in trailers will be designated as non-smoking. Also, the garage and saw shop are non-smoking.

D.  Inmates who are non-smokers shall be housed in a cell with another non-smoking inmate if they request to do so. In the event the non-smoking inmate requests to be assigned with a specific inmate who is a smoker, his request may be honored provided there are no overriding security concerns. This request shall be documented in the DC-15, waiving his rights to cell/room with a non-smoker.

E.  Non-smoking inmates currently assigned to a cell with a smoking inmate may request to be reassigned to another cell/room. The Unit Manager or staff responsible for assignment will establish a waiting list for these moves. Actual cell reassignments shall be based on availability, appropriateness of cell/cellmates, an inmate's health condition which may be aggravated by ETS and the inmate's position on the list.

F.  The Facility Manager may make exception to the above depending on space availability and security requirements of his/her facility.

G.  Designated outdoor areas will have appropriate receptacles available.

H.  <u>Education and Smoking Cessation</u> - New employees and inmates will be oriented regarding the smoking policy. Literature on the hazards of smoking will be provided to all employees and inmates on an annual basis, and smoking cessation videos will be presented over the inmate channel on a quarterly basis. In addition, anti-smoking classes for employees will be held on training day.

I.  <u>Staff, Public and Inmate Notification</u>
    Throughout the buildings, there are numerous areas where smoking shall be prohibited and shall be posted with appropriate signs.

    1.  Signs displaying the following statement shall be permanently posted at the entrance to buildings and SCI-Rockview: "SMOKING IS PROHIBITED EXCEPT IN DESIGNATED AREAS."

    2.  Smoking and non-smoking signs shall be prominently displayed.

    3.  A copy of this local directive, Management Directive 205.19 and Administrative Circular 97-14 shall be posted on employee bulletin boards.

I.  Where local ordinances on smoking are more restrictive than this policy, compliance with local ordinances shall prevail.

J.  <u>Institutional Maintenance Department Responsibilities</u>
    The Facility Maintenance Manager shall ensure that there is adequate exhaust/ventilation in areas where smoking is permitted. Fans shall be regularly maintained. Filters shall be changed at regular intervals to prevent build-up of ETS which would compromise the rights of non-smokers. Where feasible, filtration systems may be installed in authorized smoking areas.

EXHIBIT
65

In an emergency situation or extended disruption of normal institutional operation, any provision or section of this policy may be suspended by the Secretary or his/her designee for a specific period of time.

## VIII. RIGHTS UNDER THIS POLICY

A.     This policy does not create rights in any person, nor should it be interpreted or applied in such a manner as to abridge the rights of an individual. This policy should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose of the policies of the Department of Corrections.

B.     Nothing contained herein shall be construed to impair or diminish or otherwise affect any contractual agreement, collective bargaining agreement, collective bargaining rights or collective bargaining procedures.

## IX. SUPERSEDED POLICY AND CROSS REFERENCE

This policy supersedes any previous policy on this subject.

Administrative Manual Cross References:     Management Directive 205.19 (7/01/97) and Administrative Circular 97-14

ACA Cross References:  3 - 4363

TLW:deh
c: Superintendent, Deputies (2), Department Heads, Unit Managers, Captains/Shift Commanders, Employee Bulletin Boards, Mr. Sager

EXHIBIT
66

# DEPARTMENT OF CORRECTIONS

2520 Lisburn Road, P.O. Box 598
Camp Hill, PA 17001-0598



## MARTIN F. HORN

Secretary, Department of Corrections

Martin F. Horn, born June 26, 1946, in Brooklyn, N.Y., son of Zenita Horn and the late Stanley Horn; George W. Wingate H.S., 1963; Franklin & Marshall Coll. (B.A.), govt., 1966; John Jay Coll., City Univ. of N.Y. (M.A.), crim. just., 1974; parole off. & line staff, N.Y. State Div. of Parole, 1969-73; prof., crim. just., State Univ. Coll., Utica, 1973-77; dir., Penn. Release Prep., 1977-78; cont. asst. to comm., 1978-83; comm., 1983-94, N.Y. Dept. of Corr. Serv.; supt., Clay Elec. Hudson, N.Y.; asst. comm. NY. Dept. of Corr. Serv., Albany, N.Y.; Amer. Corr. Assn., Amer. Probation & Parole Assn.; appt. Secretary, Pennsylvania Department of Corrections, 1995.

Created by Act 245 of 1984, the Department of Corrections is responsible for the management and supervision of the Commonwealth's adult correctional system. Included are all state correctional institutions and regional facilities, as well as community-oriented pre-release facilities, known as community corrections centers.

Pennsylvania's correctional system played a major role in the development of corrections throughout the world. Solitary confinement and the correctional system as a tool for reform are concepts of the early "Pennsylvania System." The "Pennitentiary" was the embodiment of this philosophy. It was born in 1790 when a reform movement started with a limited penitentiary program at the Walnut Street Jail in Philadelphia. In 1829, the first true penitentiary in the world — Eastern State Penitentiary — was opened near what is now Fairmount Park in northwestern Philadelphia. Until the latter part of the 19th century, the Pennsylvania System was the model for corrections around the world and widely copied by countries overseas. "Old Eastern," also known as Cherry Hill, was ultimately closed by the Commonwealth in 1970.

In the 1920s, Pennsylvania's major prison facilities were placed under the jurisdiction of the old Department of Welfare, along with mental health facilities and juvenile institutions. A legislative investigation into major prison riots at Pittsburgh and Rockview in 1952 led to legislation which established a separate Bureau of Correction within the Department of Justice to oversee reform and operate the system. Governor John S. Fine signed the bill on August 31, 1953.

In 1980, the state Attorney General became an elected, rather than an appointed, position, and the Bureau was transferred from the Justice Department. The Bureau of Correction of General Counsel within the Governor's Office. Four years later, on December 30, 1984, Corrections was elevated to departmental status through legislation proposed and signed by Governor Dick Thornburgh.

## ADMINISTRATION

The Department is headed by a secretary, an executive deputy secretary, three regional deputy secretaries, a deputy secretary for intergovernmental relations, and a deputy secretary for administration.

## OFFICE OF THE SECRETARY

The Secretary of Corrections is responsible for the overall management and operation of the adult corrections system, including 24 institutions, 15 community corrections centers, and one motivational boot camp. The Secretary directly supervises the executive deputy secretary and the directors of the Press Office, the Office of Legislative Affairs, the Office of Professional Responsibility, and the Bureau of Management Information Services. The Department's chief executive is supported by the Secretary through the Governor's Office of General Counsel.

**Press Office** — Responsible for the coordination and release of accurate information about and from the Department to the news media and general public.

**Chief Counsel** — Provides legal representation and advice to the Department.

**Legislative Affairs** — Responsible for the introduction of and follow-up on all legislation and related matters of interest to the Department and the Legislature.

**Office of Professional Responsibility** — Conducts investigative operations regarding the internal affairs of the Department upon the order of the Secretary and upon referrals from the Office of Attorney General, Pennsylvania State Police, and the Office of the Inspector General.

**Bureau of Management Information Services** — Directs all planning and research activities within the Department and provides the Department with detailed data analysts to assist decision-making and short and long-term planning efforts. The bureau is also responsible for managing all of the Department's automated data management systems.

## EXECUTIVE DEPUTY SECRETARY

The Executive Deputy Secretary directs and manages all regional deputy secretaries through supervision of three regional deputy secretaries who provide a clear line of responsibility, authority, and direction to all institutions. Deputy Secretaries for Administration and Intergovernmental Relations and the director of the Bureau of Standards, Practices, and Security report to the Executive Deputy Secretary.

**Bureau of Standards, Practices, and Security** — The Division of Standards is responsible for the development, implementation, and maintaining policies dealing with Department procedures. It also oversees the accreditation process for all facilities and serves as a resource for all facilities. The Security Division is responsible for developing and implementing policy in all areas relating to emergency preparedness, plans, and operations; security threat groups; computerized intelligence systems; contraband interdiction, including automated drug scanning technology; training and technical efforts within the Department, including academy for the Hostage Rescue Teams, Corrections Emergency Response Teams, and Rifle Specialist teams; manpower surveys for all facilities; coordinating security plans for capital cases; and operation/security staff recommendations. This Division also serves as a resource for all statewide security offices.

## DEPUTY SECRETARY FOR THE EASTERN REGION

The Deputy Secretary for the Eastern Region oversees the operation of state prisons located in the Eastern Region of Pennsylvania.

### State Correctional Institutions — Eastern Region
SCI Coal Township, Northumberland Co. — Opened 1993, adult males
SCI Cresson, Cambria Co. — Opened 1987, adult males
SCI Dallas, Luzerne Co. — Opened 1960, adult males
SCI Frackville, Schuylkill Co. — Opened 1987, adult males
SCI Graterford, Montgomery Co. — Opened 1929, adult males
SCI Huntingdon, Huntingdon Co. — Opened 1889, adult males
SCI Mahanoy, Schuylkill Co. — Opened 1993, adult males
SCI Muncy, Lycoming Co. — Opened 1920, adult females
SCI Retreat, Luzerne Co. — Opened 1988, adult males
SCI Smithfield, Huntingdon Co. — Opened 1988, adult males

## DEPUTY SECRETARY FOR THE WESTERN REGION

The Deputy Secretary for the Western Region oversees the operation of state prisons located in the Western Region of Pennsylvania.

### State Correctional Institutions — Western Region
SCI Albion, Erie Co. — Opened 1993, adult males
SCI Greene, Greene Co. — Opened 1993, adult males
SCI Greensburg, Westmoreland Co. — Opened 1969 as a state regional correctional facility, redesignated "SCI" in 1985, adult males
SCI Houtzdale, Clearfield Co. — Opened 1996, adult males and young adult offenders
SCI Pittsburgh, Allegheny Co. — Opened 1882, adult males
SCI Rockview, Centre Co. — Opened 1915, adult males
SCI Somerset, Somerset Co. — Opened 1993, adult males
SCI Waynesburg, Greene Co. — Opened 1994, adult males
SCI Regional Correctional Facility (SRCF) Mercer, Mercer Co. — Opened 1976, adult males

## DEPUTY SECRETARY FOR SPECIALIZED FACILITIES AND PROGRAMS

The Deputy Secretary for Specialized Facilities and Programs oversees the operation of state prisons that have specialized offender populations and programs. In addition, the Deputy Secretary is also responsible for supervision of the Bureau of Operations of corrections centers, the Bureau of Education, and the Bureau of Inmate Services.

### State Correctional Institutions — Specialized Facilities and Programs
SCI Cambridge Springs, Crawford Co. — Opened 1991, adult females
SCI Camp Hill, Cumberland Co. — Opened 1941, adult males, serves as the state's sole diagnostic and classification center for males entering the state prison system.
SCI Chester, Delaware Co. — Opened 1998, adult males, serves as the state's only facility designed to treat inmates with drug and/or alcohol addictions.
SCI Muncy, Lycoming Co. — Opened 1920, adult females, serves as the state's sole diagnostic and classification center for females entering the state prison system.
Quehanna Motivational Boot Camp, Clearfield Co. — Opened 1992, adult males and females

**Bureau of Community Corrections** — Supervises the residential treatment services provided to offenders housed in the Department's 15 community corrections centers. Community corrections represents a part of the corrections system's effort to provide effective supervision of the process of reintegrating the offender with society. It is one aspect of the "pre-release program" mandated under Act 173 of 1968.

**Bureau of Inmate Services** — Responsible for the direction, monitoring, and assistance in the delivery of inmate services in the field of social work, religious and volunteer services, program review and development, classification and reception, recreation and family services, volunteer activities, religion and family services, inmate records and counseling programs and services, drug and alcohol treatment services, inmate classification, supervision, transfers, and records; diagnostic and classification process; Interstate Corrections Compact administration; and pardons services.

**Bureau of Education** — Directs and administers education-al programs in the Commonwealth's correctional institutions.

## DEPUTY SECRETARY FOR INTERGOVERNMENTAL RELATIONS

The Deputy Secretary for Intergovernmental Relations is responsible for establishing and maintaining relationships with Pennsylvania county and local government officials. This Deputy Secretary is also responsible for the oversight of the Bureau of Correctional Industries and the Office of Victim Services. Also reporting to this Deputy Secretary are the offices of Grants, Special Projects, Audits, and County Prison Inspection.

**Bureau of Correctional Industries** — Operates without support of the state General Fund. It is self-sustaining through the sale of inmate-made goods and services. Its production centers manufacture or process thousands of items, including clothing, wooden and modular office furniture, printed material, and food items.

**Office of Victim Services** — The Pennsylvania Crime Victims Bill of Rights, amended by Act 155 of 1992, provides crime victims to participate in the post-sentencing process. The Department of Corrections' Victim Services was established in 1993. This office is responsible for notifying crime victims of an inmate's release, escape, and pre-release processing via the Victim Input and Notification Program. Victims are given the opportunity to provide comment regarding the proposed pre-release of a registered crime victims whose offenders have been sentenced to a state correctional facility. This office is also responsible for coordinating the activities of the Victim Services Advisory Committee.

**Office of Grants, Special Projects, Audits, and County Inspection** — Responsible for the coordination and monitoring of all grants involving the Department of Corrections, of Pa., and completes special projects and audits as assigned to Pa. by the Secretary of Corrections or Deputy Secretaries. The Office is also responsible for performing annual inspections of all county prisons in Pennsylvania to assure compliance with Minimum Operating Standards as set forth for county prisons in Pennsylvania Code Title 37.

### DEPUTY SECRETARY FOR ADMINISTRATION

The Deputy Secretary for Administration oversees the operation of state prisons whose populations consist mainly of inmates receiving medical or mental health treatment. The Deputy Secretary is also responsible for supervision of the Bureaus of Health Care Services, Human Resources, Administration, and Operations, the Office of Equal Employment Opportunity, and the Office of Staff Development and Training.

**Bureau of Health Care Services — Administration** — Responsible for supervising and monitoring the delivery of all medical and mental health care services. The Bureau is also responsible for overseeing the food service operations throughout the prison system.

**State Correctional Institutions** — Opened 1995, adult SCI Laurel Highlands, Somerset Co. — Opened 1996, adult physically challenged inmates and SCI Waymart, Wayne Co. — Opened 1989, adult males, also serves as the state's forensic treatment unit for male inmates

**Bureau of Human Resources** — Responsible for activities relating to position classification, manpower analysis, payroll, employee benefits, leave management, placement, recruitment, and labor relations.

**Bureau of Administration** — Responsible for managing the fiscal management and support services activities of the Department of Corrections. The Bureau provides technical direction on office equipment and space utilization, and is responsible for mail and messenger services, duplication services, the Department's state vehicle fleet, and telecommunications.

**Bureau of Operations** — Directs, coordinates, and monitors the daily activities of the Department relative to maintenance, construction, safety, environmental protection, and institution audits.

**Office of Equal Employment Opportunity** — Develops and monitors the Department's Equal Employment action plans and programs as well as contract compliance plans and programs.

**Office of Staff Development and Training** — Responsible for establishing and implementing overall policy and procedures for pre-service, in-service, and out-of-service training of all Department employees.

### STATE CORRECTIONS COMMISSIONERS Since 1953

| | Appointed |
|---|---|
| Arthur T. Prasse | Aug. 31, 1953 |
| Allyn Sielaff | Oct. 8, 1970 |
| Stewart Werner | July 24, 1973 |
| Ronald J. Marks | July 1, 1975 |
| William B. Robinson | June 16, 1983 |
| Ronald J. Marks | 1983 |
| David S. Owens Jr. | 1987 |
| Joseph D. Lehman | Apr. 18, 1990 |

### STATE CORRECTIONS SECRETARIES

**Executive Deputy Commissioner**

| | |
|---|---|
| Martin F. Horn | Jan. 17, 1995 |
| Raymond (Dynor Jr.) (acting) | Mar. 1, 1995 |

**Executive Deputy Commissioner**

| | |
|---|---|
| Laurence J. Reid | May 14, 1990 |

**Deputy Commissioners**

| | |
|---|---|
| Raymond (Dynor Jr.) | Mar. 1, 1995 |
| Thomas A. Fulcomer (acting) | Apr. 8, 1997 |
| Erskind DeRamus | Dec. 14, 1997 |

**Deputy Secretaries**

| | |
|---|---|
| Kenneth Taylor | Oct. 16, 1953 |
| Allyn Sielaff | Oct. 8, 1970 |
| Stewart Werner | Dec. 8, 1970 |
| Erskind DeRamus | Oct. 1, 1973 |

**Executive Deputy Secretaries**

| | |
|---|---|
| Raymond (Dynor Jr.) | Mar. 1, 1995 |
| Thomas A. Fulcomer | Apr. 8, 1997 |

**Deputy Secretaries**

| | |
|---|---|
| Erskind DeRamus | Apr. 4, 1995 |
| Lee T. Bernard I. | Apr. 4, 1995 |
| Raymond (Dynor Jr.) | Apr. 4, 1996 |
| Thomas A. Fulcomer | Aug. 20, 1990 |
| Margaret A. Moore | Mar. 16, 1993 |
| Dr. Jeffrey A. Beard | May 2, 1994 |
| William J. Love | Sept. 8, 1994 |
| Richard J. Erhard | Sept. 8, 1995 |
| Robert D. Shearer | Jan. 2, 1996 |
| Dr. John S. Shaffer | Dec. 1, 1997 |

NOTE: With the elevation of the Bureau of Correction to a cabinet-level Department of Corrections in 1984, commissioners and deputy commissioners began using the title secretary and deputy secretary.

*Incumbent

---

## DEPARTMENT OF EDUCATION

333 Market Street, Harrisburg, PA 17126-0333

**Secretary, Department of Education**




**EUGENE W. HICKOK JR.**

Eugene W. Hickok Jr., b. 1950, in Denver, Colo., son of Gloria Cummings Hickok and the late Eugene W. Hickok; Collegiate H.S., 1968; Hampden-Sydney Coll. (B.A.), 1971, foreign aff., 1972; Univ. of Va. (M.A.), 1976, (Ph.D.), polit. sci., 1983; instr., Hampden-Sydney Coll. poli. sci., 1974–75; asst. prof., instr., Dept. of Polit. Sci., Dickinson Coll., 1979–80; adj. prof., Dickinson Sch. of Law, 1981–82; asst. prof., Georgetown U., Dept. of Justice, Wash., D.C., 1986–87; assoc. prof. Dickinson Coll., 1984–95; fel. Inst. for Judicial Studies, Wash., D.C., 1987–88; assoc. prof., Dept. of Pol. Sci., Dickinson Coll., 1990–95; dir., Clarke Ctr. for Interdisciplinary Study of Contemp. Issues, Carlisle Area Sch. Dist., 1989–95; Trustee, Harrisburg Area Comm. Coll., 1992–95; bd. mem., Amer. Pol. Sci. Assoc., Natl. Constitution Ctr., Dickinson Coll., Gene Awd. for sch. Heritage Found.; m. Katharine Farley Hickok; 2 children.

The state Constitution declares "The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth."

To carry out this mandate the General Assembly established a public school system and authorizes the Department of Education to administer these laws and assist school districts in providing educational programming.

Following passage and signing of the Free School Law on April 1, 1834, the Secretary of the Commonwealth was to superintend the common school system until 1837. In that year a separate Department of Schools was created with a Superintendent of Common Schools as its chief officer. In 1873, this title was changed. Institutions were assigned to that Department. In 1969, the name of this official and of the Department, with the title of Superintendent of Public Instruction changed to the Secretary of Education.

The mission of the Pennsylvania Department of Education is to assist the General Assembly, local communities, school districts, and others in providing for the maintenance and support of a thorough and efficient system of public education and carrying out its mission, the Department of Education will:

- develop and administer educational policies to improve the quality of education in Pennsylvania;
- conduct programs to assess the achievement of basic and higher education goals established by the General Assembly, the Governor, and the State Board of Education;
- provide advice and recommendations about education in the Commonwealth to the Governor, and the State Board of Education;
- provide leadership to basic and higher education;
- provide service and technical assistance to Pennsylvania educators;
- administer the education laws enacted by the General Assembly and approved by the Governor as well as the federal government;
- administer the regulations of the State Board of Education and the federal government, as well as standards established by the Secretary of Education;

- cooperate in the development of master plans for basic and higher education and administer those plans and manage a system of pre-service education and in-service professional development to ensure high quality preparation for in-service, elementary, and secondary teachers.
- plan and administer policies for the state library, public libraries, school libraries, and academic libraries.
- plan and administer, in cooperation with the State Board for Vocational Education and other state agencies, vocational training and programs.
- develop and administer joint educational programs with other state, federal, local and private agencies.
- conduct educational research and/or development projects and use findings to enable intelligent decisions and policies;
- provide leadership in assuring equal education opportunity.
- collect and disseminate information about education in Pennsylvania.

The Department also cooperates with independent groups concerned with public education including: the State Tax Equalization Board, the Professional Standards and Practices Commission, Public School Employees Retirement Authority, Pennsylvania Higher Education Assistance Agency, Pennsylvania Public School Employees Retirement Board, and the Pennsylvania Public Television Network Commission.

### ADMINISTRATION

**Executive Office** — The Secretary of Education, the only cabinet officer established by the Constitution of the Commonwealth, is the chief executive officer of the Department. The Secretary serves as a member or official of various boards, commissions, authorities, and councils.

**State Board of Education** — is the regulatory and policy-making board for basic and higher education in the Commonwealth. The Board works with the Department in the development of new priorities and initiatives, works with the Governor, manage special projects, and represent the Secretary in matters involving interagency cooperation.

The Secretary of Education assist in the development of new priorities and initiatives. There are 22 members of the State Board. Seventeen members are appointed by the Governor and con-

MIDDLE DISTRICT OF PENNSYLVANIA

TERRANCE MONTAGUE                    } No. 1: CV-00-0895
                  V. PLAINTIFF      } (MAGISTRATE Judge SMYSER
ROBERT W. MEYERS, ET AL,            }
        DEFENDANTS                  }

                    CERTIFICATE OF SERVICE

I TERRANCE MONTAGUE, HEReby CERTIFY that ON SEPTEMBER 4TH 2001 A TRUE
AND CORRECT COPY OF THE foregoing DOCUMENT OF EXHIBITS IN SUPPORT
OF PLAINTIFF OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
WAS SERVED ON THE FOLLOWING by PLACING IT IN THE INMATE outgoing
MAILBOX

        CLERK'S OF COURT
    U.S. DISTRICT COURT
228 WALNUT STREET
P.O. BOX 983
HARRISBURG, PA 17108


DATE: SEPTEMBER 4TH 2001

                                    TERRANCE MONTAGUE
                                    S.CI- ROCKVIEW
                                    BOX A BELLEFONTE, PA 16823-08