UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERRANCE MONTAGUE,                    :        CIVIL NO. **1:CV-00-0895**
                                      :
            Plaintiff                 :
                                      :
      v.                              :        (Magistrate Judge Smyser)
                                      :
ROBERT W. MEYERS,                     :
ROBERT S. BITNER,                     :
DAVID J. WAKEFIELD,                   :
TERRY L. WHITMAN,                     :
JACK ALLAR,                           :
LARRY LIDGETT,                        :
LT. DECKER,                           :
MAJOR YANCY and                       :
JEFFREY A. RACKOVAN,                  :
            Defendants                :

**FILED
HARRISBURG**

OCT 2 5 2001

MARY E. D'ANDREA, CLERK
Per_____
                DEPUTY CLERK

## MEMORANDUM AND ORDER

      The plaintiff, a prisoner proceeding *pro se*, commenced
this 42 U.S.C. § 1983 action by filing a complaint on May 18,
2000.  On July 6, 2000, the plaintiff filed a supplemental
complaint.  The plaintiff claims that the defendants required
him to share a cell with inmates who smoke and that the smoke
aggravates his asthma.

      The parties consented to proceed before a magistrate
judge, and on July 14, 2000, this case was reassigned to the
undersigned magistrate judge.

On July 31, 2000, the defendants filed an answer to the complaint and supplemental complaint.

By an Order dated February 23, 2001, we granted the plaintiff's motion for leave to supplement his complaint, and the plaintiff was granted twenty days to file a supplemental complaint. On March 1, 2001, the plaintiff filed a supplemental complaint which alleged that his transfer to the State Correctional Institution at Waymart (SCI-Waymart) was in retaliation for the filing of the instant action.  On March 12, 2001, the defendants filed an answer to the supplemental complaint.

On June 27, 2001, the defendants filed a motion for summary judgment.  After requesting and receiving an extension of time, on July 10, 2001 the defendants filed a statement of material facts, a brief and documents in support of their motion for summary judgment.  The plaintiff did not file a brief in opposition to the motion as required by Local Rule 7.6, Rules of Court, M.D. Pa.  By an Order dated August 8, 2001, the plaintiff was ordered to file a brief in opposition to the motion for summary judgment, a response to the defendants' statement of material facts and any summary

2

judgment evidence he has in opposition to the motion on or before August 22, 2001.

On August 17, 2001, the plaintiff filed a response to the defendants' motion for summary judgment, a brief in opposition to the motion and a response to the defendants' statement of material facts.  By an Order dated August 22, 2001 the court granted the plaintiff's request for an extension of time to file his exhibits in support of his opposition to the defendants' motion for summary judgment.  The plaintiff was ordered to file and serve his exhibits on or before September 4, 2001.  On September 13, 2001, the plaintiff filed his exhibits.

After requesting and receiving an extension of time, the defendants filed a reply brief in support of their motion for summary judgment on September 26, 2001.

By an Order dated October 16, 2001, the plaintiff's request to extend briefing beyond that authorized by the Rules of Court was denied.  Nevertheless, on October 17, 2001, the plaintiff filed a document entitled "Statement of Undisputed Material Facts."  Attached to this document are exhibits. Since

3

those documents are not authorized by the Rules without leave of court and the plaintiff was not granted leave of court to file them, we will not consider those documents.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.   In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions

4

of the record which demonstrate the absence of a genuine issue of material fact.  The moving party can discharge that burden by "'showing' . . . that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, *supra*, 477 U.S at 325.

An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party."  *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A material factual dispute is a dispute as to a factual issue that will affect the outcome of the trial under governing law.  *Anderson*, *supra*, 477 U.S. at 248.  In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party.  *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

The undisputed material facts for purpose of the instant motion for summary judgment are as follows.

The plaintiff is an inmate incarcerated at the State Correctional Institution at Rockview, Pennsylvania (SCI-

Rockview). *Defendants' Statement of Material Facts and the plaintiff's response thereto* at ¶1.   The defendants are Martin Horn, the former Secretary of the Pennsylvania Department of Corrections, Robert W. Meyers, the Superintendent at SCI-Rockview, and various other officials and employees of SCI-Rockview. *Id.* at ¶2.

The plaintiff was transferred to SCI-Rockview from the State Correctional Institution at Greensburg in May of 1999. *Id.* at ¶4.   Between May of 1999 and April of 2001 the plaintiff was housed in various locations within SCI-Rockview including A Block, the Restricted Housing Unit (RHU) and the infirmary. *Id.* at ¶5.

On December 27, 2000, the plaintiff was transferred to SCI-Waymart for an assessment of needs and treatment possibilities. *Id.* at ¶12 & Doc. 53 at 45a.   The plaintiff returned to SCI-Rockview from SCI-Waymart on January 11, 2001. Doc. 53 at 45a.

The plaintiff was transferred to the non-smoking block on April 30, 2001. *Id.* at ¶7.

6

We will first address the plaintiff's claim relating to being celled with smokers. The plaintiff's claim is an Eighth Amendment cruel and unusual punishment claim.

A claim of cruel and unusual punishment must contain allegations which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Conditions which inflict needless suffering, whether physical or mental, may constitute cruel and unusual punishment. *Tillery v. Owens*, 719 F.Supp. 1256, 1275 (W.D. Pa. 1989), *aff'd*, 907 F.2d 418 (3d Cir. 1990).

Punishment is cruel and unusual only if it is "unusually severe, if there is a strong probability that it is inflicted arbitrarily, if it is substantially rejected by contemporary society, and if there is no reason to believe it serves any penal purpose more effectively than some less severe punishment." *Rhodes v. Robinson*, 612 F.2d 766, 774 (3d Cir. 1979) (quoting *Furman v. Georgia*, 408 U.S. 238, 282 (1972) (Brennan, J., concurring)).

Eighth Amendment claims involve a two prong analysis. Eighth Amendment claims must satisfy both an objective

7

AO 72A

component (the deprivation must be sufficiently serious) and a subjective component (the defendant must have been deliberately indifferent). *Young v. Quinlan*, 960 F.2d 351, 359-60 (3d Cir. 1992).

The defendants contend that the plaintiff can not demonstrate that for the short period of time[1] that he was celled with a smoker he was exposed to such unreasonably high levels of environmental tobacco smoke (ETS) that it constituted a grave risk violative of contemporary standards of decency.

In *Helling v. McKinney*, 509 U.S. 25 (1993), the Supreme Court held that an Eighth Amendment claim is stated when it is alleged that prison officials act with deliberate indifference in exposing an inmate to levels of environmental tobacco smoke that pose an unreasonable risk of serious damage to the inmate's future health.

---

[1]The defendants in their brief identify the period of time complained about by the plaintiff as the period from February 5, 2000 to February 29, 2000. However, construing the plaintiff's complaint, supplement complaint and the Inmate Cell History submitted by the defendants (Doc. 53 at 45), we believe the time periods that the plaintiff is claiming he was celled with a smoker are: December 27, 1999 to January 4, 2000; February 7, 2000 to February 29, 2000; April 27, 2000 to May 3, 2000; and June 28, 2000 to sometime thereafter.

8

Although this case involves environmental tobacco smoke, we construe the plaintiff's claim as a claim that the defendants were deliberately indifferent to his current serious medical needs by housing him with smoking inmates, rather than stating a claim that the defendants with deliberate indifference exposed him to levels of environmental tobacco smoke that pose an unreasonable risk of serious damage to his future health.

The concept of serious medical need has two components, one relating to the consequences of a failure to treat and the other relating to the obviousness of those consequences. *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). The condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury or death. *Id.* Also, the condition must be one that has been diagnosed by a doctor as requiring treatment or one that is so obvious that a lay person would easily recognize the need for a doctor's attention. *Id.*

In the instant case, the plaintiff asserts that as a result of his exposure to environmental tobacco smoke his

9

asthma was aggravated and he had difficulty breathing.
Difficulty breathing if sufficiently severe and continuous
could lead to unnecessary suffering.  The medical records
submitted by the plaintiff document that he complained of a
history of asthma and difficulty breathing because of cigarette
smoke and that he obtained a number of medical clearance forms
from the SCI-Rockview medical department indicating that he
should be housed on a non-smoking block.  A reasonable trier of
fact could conclude that the plaintiff has a serious medical
condition which may meet the objective component of an Eighth
Amendment violation. *See* Brown v. MDOC, No. 98-1587, 2000 WL
659031 at *1 (6th Cir. May 10, 2000)("The objective component
is met if the prisoner has a serious medical need for a smoke-
free environment . . . .").

The defendants also contend that the plaintiff can not
demonstrate that they were deliberately indifferent to a
substantial risk of serious harm.

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme
Court explained the quantum of knowledge that must be possessed
by a prison official necessary to satisfy the deliberate
indifference standard.   The Court adopted the subjective

10

recklessness standard found in the criminal law as the test for deliberate indifference under the Eighth Amendment. *Id*. at 839-40. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847.

Considering the summary judgment evidence in the light most favorable to the plaintiff, we conclude that a reasonable trier of fact could conclude that the defendants were deliberately indifferent to the plaintiff's serious medical needs by requiring him to cell with smoking inmates after his numerous complaints that cigarette smoke causes him breathing problems and after he obtained medical clearance forms indicating that he should be housed on a non-smoking block.

The defendants argue that they can not reasonably be seen as deliberately indifferent given that the plaintiff had an opportunity to move to a non-smoking block sooner than he did but that he elected to stay on the smoking block. The plaintiff testified at this deposition that by the time he was approached about being moved to the non-smoking block he was in

11

a single cell and he elected to stay in his single cell rather than move to the non-smoking block and risk being celled with an inmate who sneaks smokes in his cell, as some inmates on the non-smoking block are known to do. *Doc. 53* at 12-18. The fact that the plaintiff chose to stay in a single cell on A Block rather than transfer to the non-smoking block does not mean that during the time that the plaintiff was double celled with smokers on A Block the defendants could not have been deliberately indifferent to the plaintiff's serious medical needs.

The defendants will not be granted summary judgment on the plaintiff's Eighth Amendment claim for damages.

The defendants contend that the plaintiff's claim for injunctive relief has become moot since he was transferred to the non-smoking block in April of 2001 and there are no present plans to transfer him out of that block.

Article III of the Constitution provides that the judicial power of the United State shall extend to "cases" and "controversies." U.S. Constitution, art. III, §2; *Rosetti v. Shalala*, 12 F.3d 1216, 1223 (3d Cir. 1993). Federal courts

12

AO 72A
(Rev 8/82)

lack authority to decide moot cases.   *Liner v. Jafco, Inc.*, 375
U.S. 301, 306 n.3 (1964).   If events occur during litigation
which eliminate the plaintiff's personal stake in the outcome
of the suit, the case must be dismissed as moot. *Rosetti*,
*supra*, 12 F.3d at 1224.

     The voluntary cessation of a policy or practice may
moot a case. *Thompson v. U.S. Dept. of Labor*, 813 f.2d 48, 51
(3d Cir. 1987).   However, the standard for "determining whether
a case has been mooted by the defendant's voluntary conduct is
stringent: 'A case might become moot if subsequent events made
it absolutely clear that the allegedly wrongful behavior could
not reasonably be expected to recur.'" *Friends of the Earth,
Inc. v. Laidlaw Environmental Services (TOC), Inc.* 528 U.S.
167, 189 (2000)(quoting *United States v. Concentrated Phosphate
Export Assn*, 393 U.S. 199, 203 (1968)).   The party asserting
mootness bears a heavy burden of persuading the court that the
challenged conduct can not reasonably be expected to start up
again. *Id*.

     Because of the large number of times that the plaintiff
has been transferred from cell to cell in the past and the
serial nature of his assignment to cells with smokers, the

13

defendants, through their assertion that the administration at
SCI-Rockview has no plans to transfer the plaintiff from B
Block, have not met their heavy burden of persuading the court
that it can not reasonably be expected that the plaintiff will
again be housed with an inmate who smokes.  Accordingly, at
this point, we will not dismiss the plaintiff's claim for
injunctive relief as moot.

We will next address the plaintiff's retaliation claim.

The plaintiff claims that he was transferred to SCI-
Waymart for a mental health evaluation in retaliation for the
filing of the instant action.

Retaliation for the exercise of First Amendment rights
is a constitutional violation.  *Mount Healthy City Board of
Education v. Doyle*, 429 U.S. 274 (1977); *White v. Napoleon*, 897
F.2d 103, 111-12 (3d Cir. 1990)("Retaliation for the exercise
of constitutionally protected rights is itself a violation of
rights secured by the Constitution actionable under section
1983.").

14

"As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected." *Rauser v. Horn*, 241 F.3d 330, 333 (3rd Cir. 2001). Next, a prisoner-plaintiff must show that he suffered some "adverse action" at the hands of prison officials. *Id.*

"Once these two threshold criteria are met, there remains the question of how a prisoner-plaintiff must go about proving a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Id.* "In a First Amendment retaliation case, the plaintiff has the initial burden of showing that his constitutionally protected conduct was a "substantial" or "motivating factor" in the relevant decision." *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000); *Rauser, supra*, 241 F.3d at 333-34. "Once the plaintiff carries this burden, the burden shifts to the defendant to show 'by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct.'" *Suppan, supra*, 203 F.3d at 235 (quoting *Mount Healthy, supra*, 429 U.S. at 287); *Rauser, supra*, 241 F.3d at 333-34. Prison officials may prevail by proving that they would have made the same decision

15

absent the protected conduct for reasons reasonably related to a legitimate penological interest. *Rauser, supra*, 241 F.3d at 334.

The defendants admit that the plaintiff's filing of the instant action was constitutionally protected conduct.

The defendants contend that the plaintiff can not demonstrate that his temporary transfer to SCI-Waymart constitutes an adverse action. The defendants argue that the transfer can not qualify as an adverse action because a prisoner does not have a right to be incarcerated in the institution of his choosing and because the plaintiff did not suffer any significant harm from his short temporary transfer.

While we agree with the defendants that not every action that a prisoner is subjected to is sufficiently adverse to support a retaliation claim, we disagree with the defendants' assertion that transfer to another prison for a mental health evaluation is not a sufficiently adverse action to support a retaliation claim.

16

Retaliation is actionable because retaliatory actions
may tend to chill an individual's exercise of constitutional
rights. *ACLU of Maryland v. Wicomico County*, 999 F.2d 780, 785
(4th Cir. 1993). Some showing of injury, more than a de
minimis injury, is required in a retaliation claim. *Crawford-El
v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996), *judgment vacated
on other grounds*, 523 U.S. 574 (1998); *Suppan v. Dadonna*, 203
F.3d 228, 235 (3d Cir. 2000)("Yet even in the field of
constitutional torts *de minimis non curat lex*."). The effect
of retaliation on constitutional rights need not be great to be
actionable. *Id.*("The effect on freedom of speech may be small,
but since there is no justification for harassing people for
exercising their constitutional rights it need not be great in
order to be actionable."). The standard is whether an
official's acts would chill or silence a person of ordinary
firmness from future constitutionally protected activities.
*Rauser, supra,* 241 F.3d at 333; *Allah v. Seiverling*, 229 F.3d
220, 225 (3d Cir. 2000)).

While a prisoner does not have a constitutional right
to remain in any particular institution and generally is not
entitled to due process protections prior to a transfer, prison
officials may not punish an inmate for exercising his

17

constitutional rights by transferring him to a different
prison.  *Frazier v. Dubois*, 922 F.2d 560, 561 (10th Cir. 1991);
*Murphy v. Missouri Dept. of Correction*, 769 F.2d 502, 503 (8th
Cir. 1985); Castle *v. Clymer*, 15 F.Supp.2d 640, 660 (E.D. Pa.
1998).  We can not say as a matter of law that transferring a
prisoner to another prison for a mental health evaluation would
not chill a prisoner of ordinary firmness from future
constitutionally protected activities.

The defendants also contend that they should be granted
summary judgment because the plaintiff has produced no evidence
that there is a causal connection between the filing of this
lawsuit in May of 2000 and his temporary transfer in late
December of 2000.  We agree.

The timing of an adverse action may be circumstantial
evidence of a causal link between the plaintiff's exercise of
constitutional rights and the adverse action taken against him.
"However, 'temporal proximity alone will be insufficient to
establish the necessary causal connection when the temporal
relationship is not unusually suggestive.'" *Cardenas v. Massey*,
No. 00-5225, 2001 WL 1230325 at *10 (Oct. 16, 2001)(quoting
*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir.

18

2000)).  In the instant case, the temporal relationship alone
is not sufficient to establish a reasonable inference of
causation.  There was approximately 7 ½ months between the date
that the plaintiff commenced this action and the date he was
transferred to SCI-Waymart.

The plaintiff contends that a causal connection between
his filing of this lawsuit and his transfer to SCI-Waymart for
a mental health evaluation can be inferred from the following:
1) he was under no treatment for a mental health problem; 2) he
had had no breakdowns; 3) he had no mental episodes and 4) he
was not given a mental health evaluation at SCI-Rockview but
instead was sent to SCI-Waymart, where the criminally insane
are housed.   The plaintiff has not presented timely summary
judgment evidence to support the above assertions.  However,
assuming *arguendo* that the above facts have been properly
established for summary judgment purposes, the plaintiff's own
belief that he was not in need of a mental health evaluation
from SCI-Waymart does not create a reasonable inference that he
was transferred because he filed the instant lawsuit.

Based on the instant summary judgment record a
reasonable trier of fact could not conclude that the

19

plaintiff's filing of the instant action was a substantial or
motivating factor in the decision to send the plaintiff to SCI-
Waymart for a mental health evaluation.  Accordingly, the
defendants will be granted summary judgment on the plaintiff's
retaliation claim.

AND NOW, this 25th day of October, 2001, **IT IS HEREBY
ORDERED** that the defendants' motion (doc. 48) for summary
judgment is **GRANTED IN PART AND DENIED IN PART**.  The
defendants' motion is granted as to the plaintiff's retaliation
claim.  In all other respects the motion is denied.  The Clerk
of Court is directed to delay entry of judgment for the
defendants on the retaliation claim until the conclusion of the
entire case.  A pretrial conference is scheduled for Nov. 30,
2001 at 9:30 A.m., in Courtroom No. 5, Eleventh Floor, Federal
Building, Harrisburg, Pennsylvania.  A writ of habeas corpus ad
testificandum will be issued to secure the plaintiff's presence
at the pretrial conference.  The parties shall file pretrial

20

memoranda in accordance with Local Rule 16.6.  A trial date will be selected at the pretrial conference.

J. Andrew Smyser
Magistrate Judge

Dated: October 25, 2001.

AO 72A
(Rev.8/82)

DATE: _10/25/01_____

BY: _____
Deputy Clerk